Michael J. Quilling
Texas Bar No. 16432300
Joshua L. Shepherd
Texas Bar No. 24058104
QUILLING, SELANDER, LOWNDS,
    WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

PROPOSED SPECIAL COUNSEL
FOR SCOTT M. SEIDEL, TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-31641-mvl-7** |
| **GOODMAN NETWORKS, INC.,** | § | |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| | § | |
| **SCOTT M. SEIDEL, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | **ADVERSARY PROCEEDING** |
| | § | **NO: 23-03091** |
| v. | § | |
| | § | |
| **FEDEX SUPPLY CHAIN LOGISTICS** | § | |
| **& ELECTRONICS, INC.,** | § | |
| | § | |
| Defendant. | § | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S**
**MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.      SUMMARY ...................................................................................................................1

II.     JURISDICTION .............................................................................................................2

III.    FACTS ............................................................................................................................2

IV.     PRELIMINARY INJUNCTION ....................................................................................8

    A.      Trustee is Substantially Likely to Prevail on the Merits, of the Adversary Proceeding 9

        1.      FedEx Cannot Establish Conversion, Theft, or Resulting or Express Trust Claims ...................................................................................................................................9

        2.      FedEx's Constructive Trust Claim is Converted to a Monetary Claim Under the Bankruptcy Code .................................................................................................11

        3.      Trustee has Superior Title Over Alleged Constructive Trust ...............................14

        4.      FedEx Cannot Establish a Constructive Trust Under Texas Law..........................16

        5.      FedEx has violated Automatic Stay......................................................................18

            a.      Exercising Control Over Arguable Property of the Estate (Impairing Estate Claims) ......................................................................................................20

            b.      Exercising Control Over Arguable Property of the Estate (Asserting Estate Claims) ......................................................................................................26

            c.      FedEx Asserts Claims Against the Debtor .................................................28

            d.      Stay-Related Relief Requested ..................................................................29

    B.      Irreparable Injury .................................................................................................30

    C.      Balance of Harms..................................................................................................31

    D.      Public Interest ......................................................................................................32

    E.      This Court Has Authority to Enjoin FedEx From Continuing to Pursue the District Court Lawsuit...................................................................................................32

V.      CONCLUSION..............................................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bankers Tr. Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) .................................................................................................24

*Beker Indus. Corp. v. Florida Land & Water Adjudicatory Comm'n (In re Beker Indus. Corp.)*,
  57 B.R. 611 (Bankr. S.D.N.Y. 1986) .......................................................................................31

*Belise v. Plunkett*,
  877 F.2d 512 (7th Cir. 1989) ..................................................................................................15

*In re Black & Geddes Inc.*,
  58 B.R. 547 (S.D.N.Y. 1983) ..................................................................................................12

*Black Fire Fighters Ass'n of Dallas v. City of Dallas*,
  905 F.2d 63 (5th Cir. 1990) (Jones, J. concurring) .................................................................31

*Clarkson Co. Ltd. v. Shaheen*,
  544 F.2d 624 (2d Cir. 1976) ....................................................................................................31

*In re Colonial Realty Co.*,
  980 F.2d 125 (2d Cir. 1992) ....................................................................................................29

*In re Commercial Fin. Servs. Inc.*,
  268 B.R. 579 (Bankr. N.D. Okla. 2001) .................................................................................12

*Commodities Futures Trading Comm'n v. Muller*,
  570 F.2d 1296 (5th Cir. 1978) ................................................................................................31

*Cote v. Texcan Ventures II*,
  271 S.W.3d 450 (Tex. App. – Dallas, 2008) ...........................................................................15

*CRS Steam Inc. v. Engineering Resources Inc.*,
  225 B.R. 833 (Bankr. D. Mass. 1998) .....................................................................................13

*Don Hanvey Oil Trust, Inc. v. Unit Texas Drilling, LLC*,
  2011 WL 606264 (S.D. Tex. Feb. 16, 2011) ..........................................................................27

*In re Educators Group Health Trust*,
  25 F.3d. 1281 ...........................................................................................................................21

*In re Financial Res. Mortg. Inc.*,
  468 B.R. 487 (Bankr. D.N.H. 2012) .......................................................................................10

*Fitz-Gerald v. Hull*,
  237 S.W.2d 256 (Tex. 1951).................................................................15

*Garcia v. Garza*,
  311 S.W.3d 28 (Tex. App. – San Antonio 2010, pet. denied) .................................11

*Gumport v. ICC (In re Transcon Lines)*,
  147 B.R. 770 (Bankr. C.D. Cal. 1992)..........................................................31

*In the Matter of Haber Oil Co. Inc.*,
  12 F.3d 426 (5th Cir. 1994) .................................................................13

*In re Hayward*,
  480 S.W.3d 48 (Tex. App. – Fort Worth 2015, no pet) ....................................17, 18

*Holmes v. SIPC*,
  503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)......................................24

*In re IFS Fin. Corp.*,
  2007 WL 543540 (Bankr. S.D. Tex. 2007)......................................................10

*In re Jamuna Real Est., LLC*,
  No. 04-37130, 2010 WL 2773395 (Bankr. E.D. Pa. July 13, 2010).....................24

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) ...................................................................9

*Johnson v. Home State Bank*,
  501 U.S. 78 (1991)...........................................................................11

*Lykes Bros. Steamship Co., Inc. v. Hanseatic Marine Svc, GmBH*,
  207 B.R. 282, 288 (Bankr.M.D. Tenn. 1982) …………………………………………………33

*In re Marriage of Loftis*,
  40 S.W.3d 160 (Tex. App. – Texarkana 2001) .......................................................11

*Meadows v. Bierschwale*,
  516 S.W.2d 125 (Tex. 1974).................................................................12

*Middleton-Keirn v. Stone*,
  655 F.2d 609 (5th Cir. 1981) ...............................................................31

*Miller v. Donald*,
  235 S.W.2d 201 (Tex. Civ. App. – Fort Worth 1950) ..........................................10

*Official Committee of Unsecured Creditors v. PSS Steamship Co. Inc. (In re Prudential Lines Inc.)*,
  107 B.R. 832 (Bankr. S.D.N.Y. 1989) ......................................................31

*Ohio v. Kovacs*,
  469 U.S. 274 (1985)...................................................................................................11

*In re Omegas Group Inc.*,
  16 F.3d 1443 (6th Cir. 1994) ...........................................................................12, 13, 14

*Pickelner v. Adler*,
  229 S.W.3d 516 (Tex. App. – Houston [1st Dist.] 2007) .......................................11

*Rhoten Constr. Co. v. Third Nat'l Bank*,
  22 B.R. 335, (Bankr. M.D. Tenn. 1982) ……………………………………………33

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d 469
  (S.D.N.Y. 2012*), aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81 (2d Cir.
  2014) ....................................................................................................24, 25, 27

*Segner v. Sinclair Oil & Gas Company et al.*,
  2012 WL 12885055 (N.D. Tex. 2012)....................................................................27

*In re Seven Seas Petroleum, Inc.*,
  522 F.3d 575 (5th Cir. 2008) .........................................................................21, 22, 27

*Shirkey v. Leake*,
  715 F.2d 859 (4th Cir. 1983) ................................................................................13

*SN Liquidation, Inc. v. Icon Int'l, Inc.*,
  388 B.R. 579, 585 (Bankr. D. Del. 2008) ……………………………………………...33

*In re Stylesite Marketing Inc.*,
  253 B.R. 503 (Bankr. S.D.N.Y. 2000)....................................................................13

*In re Teleservices Group, Inc.*,
  463 B.R. 28 (Bankr. W.D. Mich. 2012)..................................................................27

*Troxel v. Bishop*,
  201 S.W.3d 290 (Tex. App. – Dallas 2006)...........................................................11

*Waisath v. Lack's Stores Inc.*,
  474 S.W.2d 444 (Tex. 1971).................................................................................10

*Wenner v. Texas Lottery Comm'n*,
  123 F.3d 321 (5th Cir. 1997) ..................................................................................9

*Wheeler v. Blacklands Production Credit Ass'n*,
  627 S.W.2d 846 (Tex. App. – Fort Worth 1982, no writ) ......................................15

*Willis v. Donnelly*,
118 S.W.3d 10 (Tex. App. – Houston [14th Dist.] 2003), *aff'd and rev'd in part*, 199 S.W.3d
262 (Tex. 2006) ...................................................................................................12

*In re With Purpose, Inc.*,
No. 23-30246-MVL7, 2023 WL 5987998 (Bankr. N.D. Tex. Sept. 14, 2023) .....21, 22, 23, 24

**Statutes**

11 U.S.C. § 101(5) (2010) .........................................................................................11

11 U.S.C. § 101(5)(B) ...............................................................................................12

11 U.S.C. § 544(a)(1) & (2) ......................................................................................15

18 U.S.C. § 2314 ......................................................................................................18

28 U.S.C. § 157(b)(2) .................................................................................................2

28 U.S.C. § 157(b)(2)(A) & (B) ..................................................................................2

28 U.S.C. § 1334 ........................................................................................................2

28 U.S.C. § 1334(e) ...................................................................................................2

Bankruptcy Code § 362(a)(1) ................................................................................28, 29

Bankruptcy Code § 363(f) ...........................................................................................7

Bankruptcy Code § 541(d) .........................................................................................16

Bankruptcy Code § 544 .............................................................................................16

R.I.C.O. 18 U.S.C. § 1961 et seq. ................................................................................6

RICO ............................................................................................................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2) .....................................................10

Texas Theft Liability Act .............................................................................................5

Texas Theft Liability Act (Tex. Civ. Prac. & Rem Code § 134.003-.005) ......................6

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S
MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel, Trustee (the "Trustee"), the trustee of Goodman Networks,

Inc. (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the

"Bankruptcy Case"), and files this *Memorandum of Law* (the "Brief") *In Support of Trustee's*

*Motion for Preliminary Injunction* (the "Motion"), seeking a preliminary injunction against FedEx

Supply Chain Logistics & Electronics, Inc. ("FedEx"), respectfully stating as follows:

## I.    SUMMARY

1.    Before a different court and without leave of this Court, FedEx has sued two of the

Debtor's subsidiaries and virtually every party that the Trustee has sued or is preparing to sue in

respect of the same transactions. In so doing, FedEx asserts that the Debtor "stole" "its" property

in the form of the funds in the Debtor's bank account, and that FedEx has constructive trust rights

against all resulting transfers and proceeds. FedEx shoehorns its claims into a massive, 825

paragraph complaint allegedly personal to it, but in the process asserts control over Estate property,

seeks to take all potential recoveries for itself, and has rendered it nearly impossible for the Trustee

to administer Estate claims and causes of action. Indeed, many defendants no longer have comfort

with an Estate settlement as they now prepare to spend massive amounts of money to answer

FedEx's complaint. It is one thing for FedEx to assert *in personam* claims personal to it against

whatever defendant it wants to: go for it.  It is quite another to assert *quasi in rem* claims belonging

to the Estate. But then that was its goal: to frustrate the Trustee and the Estate in light of the

Trustee's pending settlement with Prosperity, where FedEx (as with other matters it has objected

to) has not gotten what it wanted. The Trustee controls the Estate, not FedEx. And this Court alone

determines property interests of the Estate, not FedEx. The Trustee seeks a preliminary injunction

pausing FedEx's war of attrition while this Court considers the Trustee's *Original Complaint*, which instigated this Adversary Proceeding, and through which the Trustee seeks to protect this Court's jurisdiction, enforce the automatic stay, and foster the Bankruptcy Code's fundamental policies of a centralized forum—avoiding a race to the courthouse—and equality of creditors.

## II.    JURISDICTION

2.      On November 15, 2023, the Trustee commenced this adversary proceeding (the "Adversary Proceeding") by the filing of the Trustee's *Original Complaint* [Adv. Dkt. 1].

3.      The Court has jurisdiction over the Adversary Proceeding and, in particular, the Motion, under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2).

4.      Among other things, this Adversary Proceeding seeks to determine what is property of the Estate and the extent of an asserted interest against property of the Estate, which does not exist outside of bankruptcy and which this Court has the exclusive jurisdiction to determine under 28 U.S.C. § 1334(e) regarding property in its *custodia legis*. Furthermore, the Adversary Proceeding asserts an objection to the claim of FedEx, which is undeniably core, constitutionally and statutorily under 28 U.S.C. § 157(b)(2)(A) & (B).  In addition, the Adversary Proceeding seeks to enforce the automatic stay and to recover damages for its violation, which likewise has no existence outside of bankruptcy.

## III.    FACTS

5.      By December 2020, the Debtor (or one of its subsidiaries) and FedEx were party to a Master Services Agreement and related Statement of Work (collectively, the "MSA").  In order to process payments under the MSA, the Debtor opened an account at Prosperity Bank ("Prosperity"), account number ending in 4352 (the "4352 Account").

6.      FedEx has alleged that the 4352 Account was some type of "automated" account, out of which funds should have been paid to FedEx automatically, less the .2% payable to the Debtor. The 4352 Account was not automated and no payment was made to FedEx from the 4352 Account. Instead, for the majority of the time period in question, the Debtor transferred all funds from the 4352 Account to another account at Prosperity Bank–ending in 1838 (the "1838 Account"). Payments to FedEx were made from the 1838 Account.

7.      The Trustee is not aware of any document or agreement whereby FedEx held any right to the 4352 Account or the funds therein, the 4352 Account otherwise being solely in the name of the Debtor.

8.      Beginning in November, 2021, at the direction of Frinzi, the Debtor stopped paying FedEx what the Debtor owed. As a result, large amounts of funds began to accrue in the 4352 Account such that, between November 2021 and February 2022, more than $81 million had been paid by FedEx into the 4352 Account with no payment under the MSA to FedEx.

9.      A series of transfers, large and small, orchestrated by Goodman and/or Frinzi, began in October 2021. The majority of funds were transferred to insiders and others in what the Trustee has asserted are, among other things, breaches of fiduciary duty and fraudulent transfers. These transfers and others like them (all such transfers, the "Transfers") include the following:[1]

(i)      more than $17 million to Hudson Clean Energy Enterprises, LLC and the Auerbach family, and to Goodman and his entities, which the Trustee has sued (along with others) to recover in Adversary Proceeding No. 23-03090;

---

[1] This list is not exhaustive and the Trustee's discussion of defendants and causes of action is not limiting and is not intended by the Trustee to waive or prejudice any claim against any defendant, known, asserted, unknown, or unasserted.

(ii)    more than $13.5 million to 18920 NW 11th, LLC and its insiders, Steven

Zakharyayev and Evelina Pinkhasova, and to Goodman and his entities, which the

Trustee has sued (along with others) to recover in Adversary Proceeding No. 23-

03072;

(iii)    more than $5 million to Frinzi, his company, and his family trust, which the Trustee

has sued to recover in Adversary Proceeding No. 23-03036; and

(iv)    $44 million to Frinzi and American Metals Recover and Recycling, Inc. n/k/a MBG

Holdings, Inc. ("AMRR"), which the Trustee has yet to sue for but which the Court

knows has involved extensive proceedings under Bankruptcy Rule 2004 and

Bankruptcy Rule 9019.

10.    In addition, various Estate defendants used some of the funds from the 4352

Account to obtain or acquire property for themselves, which property the Trustee is seeking to

recover or asserts is held in constructive or resulting trust for the benefit of the Estate. These

transfers and property (all such property, the "Proceeds") include the following:[2]

(i)    OnePath Systems, LLC, purchased by AMRR using the Debtor's funds;

(ii)    equity in AMRR, purchased by Frinzi, or one of his companies, using the Debtor's

funds (also involved in Adversary Proceeding 23-03036);

(iii)    a lakehouse and separate lakefront lot purchased by Frinzi's family trust using the

Debtor's funds (also involved in Adversary Proceeding 23-03036);

(iv)    $1,600,000 of the Debtor's secured bonds purchased by the Auerbachs (indirectly)

using the Debtor's funds (also involved in Adversary Proceeding 23-03090).

---

[2] *See* prior footnote.

11.     The foregoing were transfers of property of the Debtor (and not FedEx) giving rise to, among other things, claims and causes of action by the Trustee to avoid and recover the transfers as constructively fraudulent transfers and breaches of fiduciary duty by Frinzi and/or Goodman. A portion of the transfers, at least related to Adversary Proceeding No. 23-03036 pending before the Court, is also the result of embezzlement by Frinzi.

12.     On September 6, 2022 (the "Petition Date"), various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating the Bankruptcy Case and creating the Debtor's bankruptcy estate (the "Estate").

13.     FedEx joined as a petitioning creditor the following month, taking a very active role in the involuntary proceedings and the subsequent extensive proceedings by which the Debtor sought to convert its case from Chapter 7 to Chapter 11.

14.     The Court entered an order for relief against the Debtor on December 12, 2022.

15.     The Trustee is the duly appointed trustee of the Debtor and the Estate.

16.     On April 7, 2023, FedEx filed proof of claim number 32 in the Bankruptcy Case (the "Proof of Claim"). By the Proof of Claim, FedEx asserts a claim against the Estate in the amount of $81,158,452.82. The Proof of Claim also asserts "express, equitable, constructive, resulting or other trust" claims and rights. The Proof of Claim also asserts a claim under the Texas Theft Liability Act, apparently asserting that the funds in one of the Debtor's bank accounts belonged to FedEx and that the Debtor stole these funds. In particular, the Proof of Claim asserts that the Debtor transferred $76,104,141.98 from the account in question to itself, its subsidiaries, or to third parties, against most of whom the Trustee has asserted or has threatened claims.

17.    On October 27, 2023, FedEx filed its *Complaint* with the United States District Court for the Northern District of Texas, thereby initiating Case No. 3:23-cv-02397-S (the "District Court Lawsuit"), a true and correct copy of which is attached hereto as Exhibit "A."

18.    In the District Court Lawsuit, FedEx pleads 8 separate causes of action against various FedEx Defendants.[1]  For reference, below is a chart of the causes of action:

| Cause | FedEx Defendants |
|---|---|
| Cause No. 1 – Violation of Civil R.I.C.O. 18 U.S.C. § 1961 et seq. | All FedEx Defendants |
| Cause No. 2 – Theft (Embezzlement) Pursuant to Texas Theft Liability Act (Tex. Civ. Prac. & Rem Code § 134.003-.005) | James Frinzi and James Goodman |
| Cause No. 3 – Common Law Theft/ Embezzlement/ Conversion | All FedEx Defendants |
| Cause No. 4 – Common Law Unjust Enrichment | All FedEx Defendants |
| Cause No. 5 – Common Law Constructive Trust | All FedEx Defendants |
| Cause No. 6 – Common Law Fraud or Constructive Fraud | James Frinzi, James Goodman, Genesis-ATC and GNET ATC |
| Cause No. 7 – Tortious Interference | James Frinzi, James Goodman, Prosperity Bank, Genesis-ATC and GNET ATC |
| Cause No. 8 – Civil Conspiracy | All FedEx Defendants |

19.    FedEx asserts that the Debtor and the FedEx Defendants "stole" certain funds from the 4352 Account allegedly belonging to FedEx, and it asserts constructive trust rights, claims, and remedies against a large amount of transfers of property of the Debtor and the proceeds and fruits of such transfers. This Court is not constrained by the form that FedEx chose to ascribe to its claims—including a sweeping RICO claim—and is instead empowered to look at the substance.

---

[1] James E. Goodman Jr.; John Goodman; Jonathan Goodman; Jake Goodman; Joseph "Jody" Goodman; James Frinzi; Shalom Auerbach; Neil Auerbach; Steven Zakharyayev; Evalina Pinkhasova; Genesis Networks Telecom Services LLC; GNET ATC LLC; Goodman Investment Holdings LLC; Unified Field Services Inc.; American Metals Recovery and Recycling Inc.; Multiband Field Services Inc.; HSB Holdings LLC; AMR Resources LLC; Hudson Clean Energy Enterprises LLC; Auerbach Partners LP; 18920 NW 11th LLC; Prosperity Bancshares Inc.; The Frinzi Family Trust; Alliance Texas Holdings LLC; OnePath Systems LLC; Greater Tech Holdings Inc.

20.     FedEx has sued many of the same parties that the Trustee has sued or has threatened publicly to sue, including: (i) James Goodman; (ii) James Frinzi ("Frinzi"); (iii) Neil Auerbach; (iv) Steven Zakharyayev; (v) Evalina Pinkhasova; (vi) Genesis Networks Telecom Services, LLC; (vii) Goodman Investment Holdings, LLC; (viii) Unified Field Services, Inc.; (ix) American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc. ("AMRR"); (ix) Hudson Clean Energy Enterprises, Inc.; (x) 18920 NW 11th, LLC; (xi) Frinzi Family Trust; (xii) Alliance Texas Holdings, LLC; (xiii) Auerbach Partners; and (xiv) Prosperity Bank ("Prosperity").

21.     FedEx points to the same underlying transactions and allegations that form the basis of the Trustee's already filed or anticipated complaints, including: (i) $44 million transferred to AMRR; (ii) more than $17 million to Hudson Clean Energy Enterprises, LLC and the Auerbach family, and to James Goodman and his entities; (iii) more than $13.5 million to 18920 NW 11th, LLC and its insiders, Steven Zakharyayev and Evalina Pinkhasova, and to James Goodman and his entities; (iv) more than $5 million to Frinzi, his company and his family trust; (v) a loan of approximately $3.6 million to Unified Field Services, Inc.; and (vi) certain transfers to Prosperity as collateral for a loan to Genesis.

22.     Damage to the Estate has occurred and is ongoing as a result of the District Court Lawsuit. AMRR has already informed the Trustee that, because of the District Court Lawsuit, it may have to file a Chapter 11 case in order to sell assets under section 363(f) of the Bankruptcy Code, because otherwise it cannot provide clear title to a buyer. Such a filing will likely negatively impact the amount AMRR can pay the Estate on its claims. Hudson and the Auerbachs have informed the Trustee that there is no point to a settlement with the Trustee so long as the FedEx allegations are pending, and the mediation scheduled for November 9, 2023 has been postponed indefinitely. Frinzi, Goodman, and 18920 have similarly informed the Trustee that there is no point

to negotiations because a settlement with the Estate cannot provide them with the release that they would need to pay reasonable funds. Moreover, the Trustee will have to expend funds and other resources to answer or otherwise respond to the District Court Lawsuit on behalf of the Debtor's subsidiaries.

### IV.    PRELIMINARY INJUNCTION

23.    Federal Rule of Bankruptcy Procedure 7065 provides that Federal Rule of Civil Procedure 65 applies in adversary proceedings. Rule 65 enables the Court to issue a preliminary injunction, pending trial, with the addition that that Trustee is relieved from the requirement of providing security under Rule 65(c).

24.    The Trustee is seeking a preliminary injunction, and prompt consideration of same, to protect the Estate at the earliest possible stage of the District Court Lawsuit. Two of the Debtor's subsidiaries, GNET ATC LLC and Multiband Field Services, Inc., have both been named as defendants in the District Court Lawsuit. Both were served on November 8th and because the Debtor is the sole shareholder or member of the subsidiary defendants, the District Court Lawsuit now falls into the Trustee's lap, who has limited and, indeed wasting, resources. The Trustee should not be required to expend valuable resources monitoring and participating in the District Court Lawsuit while the Adversary Proceeding is pending. Similarly, other parties to the District Court Lawsuit are facing hundreds of thousands, if not more, in legal bills due to the District Court Lawsuit and its 825-paragraph complaint. Those are funds that would be better saved to improve recoveries to the Estate instead of spent responding in another forum to the exact same allegations raised by the Trustee.

25.    The Trustee is entitled to a preliminary injunction and the resulting protections afforded by a pause in the District Court Lawsuit until this Court has an opportunity to render

judgment in the Adversary Proceeding. The four elements of a preliminary injunction are: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

26.     "[T]he issuance of a prohibitory injunction freezes the *status quo*, and is intended to preserve the relative positions of the parties until a trial on the merits can be held. Preliminary injunctions commonly favor the *status quo* and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned." *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) (internal quotation and citation omitted).

**A.      Trustee is Substantially Likely to Prevail on the Merits of the Adversary Proceeding**

27.     FedEx asserts that it owned the funds in the 4352 Account, that its funds therein were stolen, and that it has constructive, express, and resulting trust rights against such funds and any transfers of those funds or resulting proceedings. The Trustee disputes these assertions and seeks declarations to the contrary. Ultimately, because FedEx also asserted these interests in its Proof of Claim, the Trustee submits that it is FedEx's burden of proof and persuasion on these asserted interests upon a trial on the merits and that the Court can and should take this into account, although the Trustee concedes that he must demonstrate a substantial likelihood of success on the merits for a preliminary injunction.

28.     This, the Trustee can do under both Texas law and the Bankruptcy Code.

**1.      FedEx Cannot Establish Conversion, Theft, or Resulting or Express Trust Claims**

29.     Conversion requires that one's property be taken without consent. *See Waisath v. Lack's Stores Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). The same is true of theft generally. *See, e.g.,*

Case 23-03091-mvl    Doc 5    Filed 11/21/23    Entered 11/21/23 16:05:57    Desc Main
Document      Page 16 of 40

TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2). Funds held in a bank account are presumed to

be owned by the person in whose name the account is held. *See, e.g., In re Financial Res. Mortg.*

*Inc.*, 468 B.R. 487, 502 (Bankr. D.N.H. 2012); *In re IFS Fin. Corp.*, 2007 WL 543540 at *4 (Bankr.

S.D. Tex. 2007) ("Texas law presumes that the owner of a bank account is the one whose name is

on the account"). This presumption is not absolute, but FedEx has obtained no judgment that the

funds held in the 4352 Account were its property.

30.     There is no question of fact that the 4352 Account was held solely in the Debtor's

name and not in FedEx's. There is no question that the MSA makes no reference that any funds

held by the Debtor are owned by FedEx. There is no other agreement that provides for or even

suggests the same, even if FedEx could claim some colorable right to a trust as opposed to

ownership. As such, both because of the aforementioned presumption and the obvious facts, the

Trustee has shown a substantial likelihood of success on the merits of his claim that the Debtor

and the FedEx Defendants did not convert or steal FedEx's property, for the simple reason that

FedEx did not own the 4352 Account or the funds therein.

31.     For similar reasons, FedEx cannot demonstrate any right to the remedy of resulting

trust. A resulting trust, unlike a constructive trust, arises by operation of law *ab initio* and does not

require a judicial determination to attach (even if one is required to confirm). But a resulting trust

requires that "title is conveyed to one person but the purchase price is paid by another." *Miller v.

Donald*, 235 S.W.2d 201, 205 (Tex. Civ. App. – Fort Worth 1950). It is the one who pays the

consideration that is the key: if one's property is used to make the payment, but the title is wrongly

placed in another, then the other holds the property in trust for the one whose funds were used.

*See, e.g., In re Marriage of Loftis*, 40 S.W.3d 160, 164 (Tex. App. – Texarkana 2001). "Generally,

the law is suspicious of resulting trusts, and consequently a heavy burden of proof is placed on the

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - PAGE 10**

party attempting to establish the existence of one." *Troxel v. Bishop*, 201 S.W.3d 290, 298 (Tex. App. – Dallas 2006).

32.    Here, because FedEx did not own the funds in the 4352 Account, and because nothing was purchased or acquired by the Debtor with those funds, FedEx has no resulting trust remedy as a matter of law. Again, its property was not used to acquire anything.

33.    On the issue of express trust, which FedEx claims in its Proof of Claim, the answer is simple: an express trust requires an agreement of trust (*i.e.* it is not implied by law), which cannot be supplied by parol evidence, and FedEx puts forth no evidence of any such agreement. *See, e.g., Pickelner v. Adler*, 229 S.W.3d 516, 525-26 (Tex. App. – Houston [1st Dist.] 2007). Indeed, the express terms of the MSA, which include a merger clause and provide no provisions indicating a trust agreement, preclude any finding of an express trust.

## 2.    FedEx's Constructive Trust Claim is Converted to a Monetary Claim Under the Bankruptcy Code

34.    The Bankruptcy Code defines "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5) (2010). The term "claim" is to be broadly construed. *See Ohio v. Kovacs*, 469 U.S. 274, 279 (1985). In fact, the Supreme Court has held that Congress intended by the definition of "claim" to "adopt the broadest available definition." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

35.    Under Texas law, the imposition of a constructive trust is a remedy; it is not in and of itself a cause of action. *See, e.g., Garcia v. Garza*, 311 S.W.3d 28, 40 (Tex. App. – San Antonio 2010, pet. denied) ("[a] constructive trust is an equitable remedy created by the courts to prevent unjust enrichment"). The imposition of a constructive trust requires either actual fraud or breach of a confidential relationship. *See, e.g., Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.

1974). Each of these causes of action clearly gives rise to *either* money damages or the potential imposition of a constructive trust. *See Willis v. Donnelly*, 118 S.W.3d 10, 37 (Tex. App. – Houston [14th Dist.] 2003), *aff'd and rev'd in part*, 199 S.W.3d 262 (Tex. 2006).

36.     A "claim" is defined as a right to payment or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B). A constructive trust under Texas law is exactly a "right to an equitable remedy for breach of performance." Thus, because a constructive trust is an equitable remedy under Texas law for a breach which also gives rise to money damages under Texas law, the constructive trust sought by FedEx is a "claim" under the Bankruptcy Code.

37.     In other words, FedEx's prepetition constructive trust claim is converted into a monetary claim as of the Petition Date, and FedEx may no longer pursue an equitable interest against Debtor property. Otherwise, in many bankruptcy cases it would be a free-for-all, considering how many times bankruptcy courts see fraud, breach of duty, and similar claims. The whole point of an equitable distribution would be lost since, in some respect, any unpaid creditor can complain of having been taken advantage of.

38.     This conclusion is confirmed by each case which has analyzed the issue. *See, e.g., In re Omegas Group Inc.,* 16 F.3d 1443, 1449 (6th Cir. 1994); *In re Black & Geddes Inc.*, 58 B.R. 547, 552 (S.D.N.Y. 1983); *In re Commercial Fin. Servs. Inc.,* 268 B.R. 579, 598 n. 27 (Bankr. N.D. Okla. 2001) (agreeing that "exclusion from the estate of an equitable interest in constructive trust property conflicts with the unambiguous definition of "claim""); *In re Stylesite Marketing Inc.*, 253 B.R. 503, 511 (Bankr. S.D.N.Y. 2000) (agreeing that constructive trust action was a "claim" because state law provided the alternative remedy of money damages: "it is sufficient that

the words of the Code render the constructive trust a 'claim'"); *CRS Steam Inc. v. Engineering Resources Inc.*, 225 B.R. 833 (Bankr. D. Mass. 1998).

39.     And this simple conclusion ignores the obvious fact that a constructive trust must be equitable in nature. Giving one unsecured creditor interests in property of the Estate, thereby excluding that property from the Estate and the recoveries of other creditors, is not equitable as a matter of law:

> Just as medieval alchemists bent all their energies to discovering a formula that would transmute dross into gold, so too do modern creditors' lawyers spend prodigious amounts of time and effort seeking to convert their clients' general, unsecured claims against a bankrupt debtor into something more substantial.

*In the Matter of Haber Oil Co. Inc.*, 12 F.3d 426, 431 & 436 (5th Cir. 1994).

40.     The Court therefore cannot impose a constructive trust post-petition, as this would conflict with the conversion of that remedy into a monetary claim and as it would prefer one unsecured claim over another or, alternatively, elevate all unsecured creditors to the status of constructive trust beneficiaries. *See XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d at 1449 (6th Cir. 1994); *Shirkey v. Leake,* 715 F.2d 859, 863 (4th Cir. 1983). As summarized by the Sixth Circuit:

> We think that § 541(d) simply does not permit a claimant in the position of Datacomp to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee. Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust. Therefore, a creditor's claim of entitlement to a constructive trust is not an "equitable interest" in the debtor's estate existing prepetition, excluded from the estate under § 541(d).

*In re Omegas Group Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Again, FedEx neither sought nor obtained the remedy of constructive trust pre-petition, which it could have, and it simply cannot now obtain any such remedy post-petition.

41.     And this is aside from FedEx's own inequitable conduct, including: (i) engaging in a sham "minority owned business" arrangement so as to be able to obtain contracts and pretend that it was supporting a minority owned business, when in truth it was paying the Debtor .2% for the use of its name; (ii) not taking prompt remedial action to assert its rights once the Debtor stopped paying it; and (iii) taking multiple positions and making multiple judicial admissions directly at odds with the notion of a constructive trust; *i.e.* "[t]he entire agreement was [a] financing arrangement that did not require the minority business enterprise to have significant cash outlays." District Court Lawsuit at ¶ 749.

42.     Therefore, because FedEx failed to obtain a judicial determination of constructive trust pre-petition, its constructive trust remedy is converted into a monetary claim by the Bankruptcy Code and, even if not, it would be exceedingly rare if even permissible under principles of equity for this Court, a court of equity, to elevate FedEx's otherwise unsecured claim into taking essentially the whole Estate for itself.

**3.     Trustee has Superior Title Over Alleged Constructive Trust**

43.     Even assuming, *arguendo*, that FedEx may assert a constructive trust claim against property of the Estate, Texas law holds as follows:

> equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.

*Wheeler v. Blacklands Production Credit Ass'n*, 627 S.W.2d 846, 849 (Tex. App. – Fort Worth 1982, no writ) (emphasis added).

44.     This is the holding of the Supreme Court of Texas as well: "until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the

[constructive] trust." *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 263 (Tex. 1951). Stated differently, "[w]hen property subject to a constructive trust is transferred, the recipient of the property takes title to the property subject to the trust if (1) the recipient does not give consideration for the property or (2) the recipient has notice of the existence of the trust at the time of the transfer." *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453 (Tex. App. – Dallas, 2008).

45.     Under the Bankruptcy Code, the Trustee has the "rights and powers" of, and "without regard to any knowledge of the trustee or of any creditor," "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists," and "a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists." 11 U.S.C. § 544(a)(1) & (2).

46.     Accordingly, just as a good faith purchaser for value would take any property otherwise claimable to be subject to a constructive trust free and clear of the trust, so the Trustee holds property of the Estate free and clear of FedEx's alleged constructive trust. *See, e.g., Belise v. Plunkett*, 877 F.2d 512, 514-15 (7th Cir. 1989).

47.     Admittedly, the issue is not perfectly clear, since section 544(a)(3) applies to a *bona fide* purchaser of real property and the present issue does not involve real property. Section 544(a)(1) instead applies to a judgment creditor and section 544(a)(2) to an execution, and the Trustee has not located a Texas opinion that addresses the interplay between a constructive trust and the rights of these creditors. However, as Texas law is clear that a purchaser without notice takes free of a constructive trust, even though a constructive trust may be said to place equitable

ownership in the hands of the rightful owner, then there is no reason in law, fact, or logic why a judgment lienor or executioner would not be able to obtain the same property free of the trust.

48.    Also of relevance, the Fifth Circuit, in *In the Matter of Quality Holstein Leasing*, held that section 544 of the Bankruptcy Code does not trump over a constructive trust claim. 752 F.2d 1009, 1013 (5th Cir. 1985). However, the court limited its holding to a constructive trust that "attaches prior to the petition date." *Id*. at 1014. When no such trust attaches prepetition, however, the Fifth Circuit seems to agree with the Trustee's argument:

> The remaining issue concerns whether the fraud that Borg-Warner alleges provides grounds for imposing a constructive trust on the Seneca, thus allowing only legal title to pass into the QHL estate. . .  Even assuming that Texas law would permit impression of a constructive trust, however, we disagree with the conclusion that Borg-Warner may overcome the trustee's strong arm. . .  We believe that Borg-Warner misconceives the function of the trustee's strong-arm powers. They serve essentially to marshal all of the debtor's assets, including some that the debtor itself could not recover, in order to enhance the resources available to the pool of creditors.

*Id*. at 1014 (internal citation omitted).

49.    Thus, the Fifth Circuit's opinion actually bolsters the Trustee's argument that his strong-arm powers trump a constructive trust claim not reduced to judgment prepetition, the same as a buyer without notice would take the property free of the trust. Had FedEx obtained a constructive trust pre-petition then the issue would be different under section 541(d) of the Bankruptcy Code, but FedEx neither sought nor obtained any such relief.

### 4.    FedEx Cannot Establish a Constructive Trust Under Texas Law

50.    Unlike a resulting trust, a constructive trust does not originate *ab initio* and does not exist unless and until imposed by a court. Texas law is well developed on the remedy of constructive trust, aptly summarized by one court as follows:

> A party seeking to impose a constructive trust must establish (1) breach of a special trust or fiduciary relationship or actual or constructive fraud, (2) unjust enrichment of the wrongdoer, and (3) an identifiable *res* that can be traced back to the original

property. The proponent of a constructive trust must strictly prove these elements. To prove an identifiable *res*, the proponent of the constructive trust must show that the specific property that is subject to the constructive trust is the same property— or the proceeds from the sale thereof or revenues therefrom—that was somehow wrongfully taken. When the property sought to be recovered or its proceeds have been dissipated so that no product remains, the constructive-trust-seeking proponent's only claim is that of a general creditor. A constructive trust on unidentifiable cash proceeds is inappropriate.

*In re Hayward*, 480 S.W.3d 48, 52 (Tex. App. – Fort Worth 2015, no pet) (internal citations omitted). Even with tracing, which the Trustee can assume FedEx has done, tracing is not enough:

A constructive trust cannot attach to unidentified assets; definitive, designated property, wrongfully withheld from another, is the very heart and soul of the constructive trust theory.  In order to fasten a constructive trust on property owned by the defendant, some particular property must be identified.

*Id*. at 53 (internal citation omitted).

51.    FedEx's constructive trust claim fails most if not all of these elements under the clear facts:

(i)    there was no fiduciary or trust relationship between the Debtor and FedEx;

(ii)    there was no actual or constructive fraud—the Debtor simply did not pay what it owed to FedEx;

(iii)    the 4352 Account was not a trust, escrow, or blocked account, or an account with respect to which FedEx held any property interest; and

(iv)    FedEx cannot identify a specific *res* even if it can trace the funds from the 4352 Account, because the Debtor (the one with the alleged special relationship) did not acquire anything with the funds, the funds being taken from the Debtor instead by persons through breaches of fiduciary duty and fraudulent transfer, resulting in unliquidated causes of action which are not the type of discrete, readily identifiable property against which a constructive trust may be imposed.

52.    As FedEx judicially admits, "[t]he entire agreement was a financing arrangement that did not require the minority business enterprise to have significant cash outlays." District Court Lawsuit at ¶ 749. And, "[w]ithout the requirement that the *res* be strictly traced back to the original property wrongfully withheld from the movant for a constructive trust or to proceeds from that property, any suit on a debt or obligation could be used to impress a constructive trust on the assets of the defendant." *In re Hayward*, 480 S.W.3d at 53.

**5.    FedEx has violated Automatic Stay**

53.    The breadth and scale of the automatic stay violations contained in the FedEx Complaint are stunning. Apparently ignorant of, or willfully ignoring, the Fifth Circuit's *In re Chesnut*[2] opinion and without any notice to the Trustee, FedEx filed the District Court Lawsuit seeking to recover on claims which FedEx has, for nearly a year, characterized as Estate claims.[3] Ironically, one could substitute the Trustee for FedEx as the plaintiff in the FedEx Complaint and simply rename the causes of action to how they naturally align (fraudulent transfer and breach of fiduciary claims rather than a contorted RICO claim), and it would be a comprehensive suit for return of all transfers out of the Debtor. Perhaps that is FedEx's point, as FedEx has disagreed at nearly every turn with the strategic decisions of the Trustee, clearly thinking itself a better candidate to assert claims of the Estate. FedEx's formidable reversal from a champion for the

---

[2] As this Court stated as recently as September 13, 2023, "The Court has stated more than once that *Chesnut* stands for the simple proposition in questioning whether the stay applies: Ask for permission, not forgiveness." The wisdom and practicality of *Chesnut* is undeniable. Rather than dealing with a motion for relief from the automatic stay as a gateway and collective process to deal with complicated issues, dozens of interested parties in the Bankruptcy Case are now spending thousands of dollars on legal counsel to determine the propriety of FedEx's rogue action. Similarly, many parties with whom the Trustee was negotiating (for the benefit of all creditors and predominantly FedEx) to settle claims have withdrawn from negotiations. The impact on the Estate is difficult to assess at this juncture but may likely run into the millions.

[3] For example, on October 11, 2023, counsel for FedEx argued that a transfer of $4,463,804.68 million out of the 4352 account at Prosperity was a fraudulent transfer by Prosperity as against the Debtor: "We think at this point in time there is a fraudulent transfer under 548." Oct. 11, 2023 Tr. At 167:16–17. Barely two weeks later, on October 27, 2023, in the FedEx Complaint, the same transfer was instead a violation of 18 U.S.C. § 2314. FedEx Complaint at para. 667–76.

Estate's claims to cutting the line ahead of all other creditors has been poorly disguised as an attempt to assert only "direct" claims of FedEx. But the substance of what FedEx has done is transparent, it cannot go unpunished, and the Trustee seeks to hold FedEx accountable.

54.      Critically, the District Court Lawsuit contains a fatal flaw. For FedEx to prove its claims (and to recover against the various non-Debtor defendants), a finding is *necessary* that the Debtor was a party to these transactions and that the Debtor was damaged. How can FedEx credibly maintain that the schemes it outlined caused injury only to FedEx but not to the Debtor and the dozens of creditors who have filed claims totaling in the millions of dollars? Indeed, as FedEx's counsel well knows in soliciting and representing other creditors to join the involuntary petition against the Debtor, there is a long list of parties having been injured by the Debtor's inability to pay its obligations. It cannot be denied that harm was done to the Debtor. There are dozens of disguised claims for breach of fiduciary duty and fraudulent transfers contained in the District Court Lawsuit, each of which are *necessary* to any FedEx recovery. But only the Trustee may assert claims for the redress of these injuries to the Debtor.

55.      As outlined below, each and every transaction of funds out of the Debtor's accounts was, as to the Debtor, for less than reasonably equivalent value, or in breach of fiduciary duty or contract, or based on some other theory of an ***estate claim***. It is likely that the Estate's claims overlap and are co-extensive – but that is why the automatic stay exists and why parties wishing to pursue individual claims separate from the bankruptcy process should seek relief from the automatic stay first.

56.      FedEx's stay violations can be divided into three categories. First, FedEx is attempting to exercise control over property of the Estate because all of its claims turn on claims that injured the Debtor which only the Trustee may assert and are therefore, at a minimum,

arguable property of the Estate. Second, FedEx has asserted claims that are property of the Estate.

Third, FedEx is proceeding on claims against the Debtor, notwithstanding its pretenses to the

contrary.

      **a.**      **Exercising Control Over Arguable Property of the Estate (Impairing Estate Claims)**

57.      As the Court considers automatic stay issues in detail, the Fifth Circuit's important

opinion in *In re Chestnut* cannot be overlooked. 422 F.3d 298 (5th Cir. 2005). The Fifth Circuit

phrased the overall question before it as whether a "creditor violates the stay if, without permission

of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim

of right." *Id*. at 300. The Fifth Circuit answered this question in the affirmative – a creditor does

violate the automatic stay even if the property in question is only arguable property and even if it

is later determined that the property was not property of the estate. *See id*. When a creditor is

uncertain regarding whether property is property of an estate or not, or whether it may be

"arguable" property, "bankruptcy law demands some process prior to the seizure of arguable

property." *Id*. at 304. Thus, where the estate has a non-frivolous claim to property, a creditor

violates the automatic stay by unilaterally seizing that property or exercising control over that

property. *See id*. Here, the Estate has far more than a colorable, non-frivolous claim of ownership

of the causes of action asserted by FedEx: they *are* the Estate's property.

58.      The Estate owns "all legal or equitable interests of the debtor in property as of the

commencement of the case," including "rights of action such as claims based on state or federal

law." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (other internal citations

omitted). "Whether a particular state-law claim belongs to the bankruptcy estate depends on

whether under applicable state law the debtor could have raised the claim as of the commencement

of the case." *Id.* (citing *In re Educators Group Health Trust*, 25 F.3d. 1281 at 1284 (other internal

citations omitted)). If the Debtor could have raised the claim as of the commencement of the case,

the Trustee has exclusive standing to assert the claim. *See Schertz–Cibolo–Universal City, Indep.*

*Sch. Dist. (In re Educators Grp. Health Trust)*, 25 F .3d 1281, 1284 (5th Cir. 1994).

59.     The inquiry does not end with the specifically alleged claim; instead, the Court must

look at the nature of the injury for which relief is sought and consider the relationship between the

Debtor and the injury. *In re With Purpose, Inc.,* No. 23-30246-MVL7, 2023 WL 5987998, at *3

(Bankr. N.D. Tex. Sept. 14, 2023) (citing *Seven Seas*, 522 F.3d at 584; *Educators*, 25 F.3d at 1284).

*Id.* at 1285.  Specifically,

> If a cause of action alleges only indirect harm to a creditor (i.e., an injury which
> derives from harm to the debtor), and the debtor could have raised a claim for its
> direct injury under the applicable law, then the cause of action belongs to the estate.
> Conversely, *if the cause of action does not explicitly or implicitly allege harm to
> the debtor*, then the cause of action could not have been asserted by the debtor as
> of the commencement of the case, and thus is not property of the estate.

> *Id.* (emphasis added)

60.     As an in initial matter, the Trustee does not argue that FedEx has no direct claims

against any party for what occurred. The FedEx Complaint certainly contains sufficient allegations

which would permit for direct claims to be asserted.  For example, FedEx maintains that various

persons at the Debtor misrepresented the Debtor's financial circumstances, and, though not

identifying what alleged duty was breached, FedEx implies that it should have been informed about

the Debtor's faltering financial condition. *See, e.g.* FedEx Complaint at para 86 ("Neither Frinzi

nor anyone associated with Genesis-ATC, Goodman Networks nor GNET ATC informed FSCLE

that Goodman Networks was winding down and its assets being parceled out."). Presumably

FedEx would have repudiated its contract with the Debtor or otherwise protected itself. As in *Seven

Seas*, FedEx could likely sue those various non-Debtors for FedEx's reliance on false or omitted

information leading to continued transfer of funds to the Debtor, etc. And FedEx has of course

asserted a claim against the Debtor for these damages as well. *See* FedEx POC. Certainly the Debtor itself was not harmed by the transfers of funds into the Debtor, so claims against those persons for misrepresentations made *to FedEx* would not be estate claims.

61.     However, as in *With Purpose*, "that is not to say that the Debtor does not have some other claim for the actions alleged." *In re With Purpose, Inc.*, 2023 WL 5987998, *5 (Bankr. N.D. Tex. 2023). Where FedEx likely has a claim against non-Debtors for their misrepresentations, the Estate likely has a claim against the same for breach of fiduciary duty. Hence the Fifth Circuit's observation that "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Seven Seas*, 522 F.3d at 585. None of that is in dispute, and it may be that the tortious interference cause of action in the FedEx Complaint is permissible as a direct claim.

62.     But the FedEx Complaint does much, much more. Rather than seeking a recovery only from those having made the misrepresentations upon which FedEx relied in transferring its funds to the Debtor's account, FedEx seeks recovery from a dozen *transferees of the Debtor's funds* once the funds were already at the Debtor. This is where FedEx crosses the line. Once the funds were transferred by FedEx pursuant to contract into the Debtor's account, undeniably under the Debtor's control, the improper dissipation of those (and other) funds injured the Debtor *first* and its creditors *by extension*. FedEx, like other major creditors including ARRIS and the Debtor's bondholders, suffered an injury *from the dissipation* out of the Debtor only because *the Debtor* suffered the injury in the first place. Had the Debtor simply held on to the funds and had the same accumulated in the 4352 Account then the only FedEx claims would be against the Debtor and its agents for their misrepresentations. Up to that point, FedEx has its proof of claim against the Debtor and has direct claims against the Debtor's agents. But once funds were transferred by the

Debtor for improper reasons and to the great detriment of the Debtor, the injury became generalized, affecting the enterprise of the Debtor and, by extension, all of the Debtor's creditors. Only the Trustee may seek redress for *that* injury. But FedEx seeks to recover precisely those same transfers for itself.

63.    Given that FedEx did not deem it necessary to seek relief from the automatic stay, the burden must now be on FedEx to show that the District Court Lawsuit does not affect or impair any claims or causes of action of the estate against any person, and this it plainly cannot do. As this Court has recently ruled in another complicated automatic-stay dispute, litigation "shall be permitted to proceed … with respect to direct claims … against non-Debtor Defendants, insofar as such claims do not include claims against the Debtor or the estate, any claims of the Debtor or the estate, ***or affect or impair any claims or causes of action of the estate against any person***…" *With Purpose* at *11. In order for the FedEx Complaint to be consistent with the automatic stay, it must be the case that the claims and injury being redressed (i.e. FedEx's $80 million claim) *will have no effect nor will impair any claims or causes of action of the estate against any person.* And this is impossible. FedEx must argue that only it, and no other creditor of the Debtor nor the Debtor itself, was harmed by the mismanagement, self-dealing, and other bad acts described. This strains credulity. For this reason this Court, in *With Purpose*, observed that "Plaintiffs were not entitled to assert claims resulting from an alleged breach of fiduciary duty, mismanagement, self-dealing … or any claim based upon a harm to all investors or the enterprise…" *Id. With Purpose* at *6. But here, each and every transaction is "resulting from an alleged breach of fiduciary duty, mismanagement, self-dealing … or any claim based upon a harm to … the enterprise." *Id. With Purpose* at *6.

64.    This is equally true in the context of FedEx's RICO claim. FedEx must show that

its injury was *proximately caused* by the alleged enterprise; "but for" causation is insufficient. *See*

*Holmes v. SIPC*, 503 U.S. 258, 268–269, 112 S.Ct. 1311, 1317, 117 L.Ed.2d 532 (1992). What is

required, then, is "some direct relationship between the injury asserted and the injurious conduct

alleged." *Id*. "In other words, any claim that is derivative of harm sustained by another will not

suffice." *In re Jamuna Real Est., LLC*, No. 04-37130, 2010 WL 2773395, at *9 (Bankr. E.D. Pa.

July 13, 2010). As stated above, FedEx can allege whatever claims it wants (including under

RICO) against the directors and officers of the Debtor with respect to FedEx's transfers *into* the

Debtor.[4] But once the funds were in the Debtor's account, the harm FedEx sustained was

"derivative of harm sustained by another", i.e. the Debtor.

65.    In the Madoff bankruptcy case, the Southern District Court of New York issued an

injunction and found a stay violation where a class of Madoff customers brought RICO and

fraudulent transfer claims against transferees of Madoff. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d

469 (S.D.N.Y. 2012*), aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81 (2d Cir.

2014)*.* Specifically, "[the plaintiffs] assert claims against the Picower Defendants for, *inter alia*,

conversion, unjust enrichment, conspiracy, and violations of Florida's [RICO] Act, all arising from

the Picower Defendants' alleged involvement in Madoff's Ponzi scheme. They seek compensatory

damages … and the imposition of a constructive trust, disgorgement of ill gotten gains or

restitution, treble damages, and punitive damages." *Id.* at 429. The Madoff trustee filed a complaint

---

[4]Case law holds that a creditor can assert predicate acts as part of a RICO claims against the directors and officers of
a corporation which acts may also form derivative/estate claims. *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.
1988). The distinction here is that by taking the next steps and including the transferees of the Debtor (who had nothing
to do with causing FedEx to continue to transfer funds into the Debtor) as target defendants, the harm is no longer
direct to FedEx, but rather direct to the Debtor and derivative as to FedEx.

against the plaintiffs for an injunction and stay violation. The Court granted both because the lawsuits sought "to redress the depletion of the BLMIS customer property fund, a harm that derivatively injures all customer claimants in the BLMIS liquidation. In no way were the Florida Plaintiffs in privity with the Picower Defendants; rather, they were directly invested with [Madoff]. Nowhere do the Florida Plaintiffs contend that the Picower Defendants owed a separate duty, or caused a separate harm, particularly to them." *Id.* at 431–32.

66.     Likewise here, FedEx seeks redress from the depletion of funds out of the Debtor, a harm that derivatively injured all of the Debtor's creditors. Similarly, none of the transferees in the FedEx complaint were in privity with FedEx, nor does FedEx allege that any of the transferees owed FedEx any duty. The recovery FedEx seeks is nearly identical to the recovery the Trustee has expressly sought against various defendants already, and which the Trustee intends to seek from many more defendant-transferees of the Estate in due course.

67.     The District Court Lawsuit, including its extensive description of predicate acts as well as the causes of action and the injury for which it seeks a remedy, impairs or affects at a minimum the following Estate claims:

| Estate Claim | Defendant | FedEx Complaint ¶ |
| --- | --- | --- |
| Breach of fiduciary duty (care) | James Goodman | AMRR transaction (Paras. 240-383); Hudson transaction (Paras. 284-319); 18920 transaction (Paras. 320-362); UFS Transaction (Paras. 416-21) |
| | John Goodman | UFS Transaction |
| | James Frinzi | AMRR transaction; Hudson transaction; 18920 transaction; UFS Transaction |
| | Jason Goodman | Resignation knowingly leaving insufficient governance (Para. 96) |
| | Jody Goodman | Resignation knowingly leaving insufficient governance (Para. 96) |
| Breach of fiduciary duty (loyalty) | James Goodman | UFS Transaction; Prosperity pledge (Paras. 398-410); AMRR transaction; Hudson transaction |
| | John Goodman | GTH Transaction |

|  | James Frinzi | AMRR Transaction |
|---|---|---|
| Fraudulent transfer | Hudson / Alliance / Auerbach | Hudson Transaction |
|  | 18920 / Zakharayev / Pinkhasova / Auerbach | 18920 Transaction |
|  | All Goodmans | Paras. 363-391 |
|  | James Goodman / Genesis | Prosperity Pledge; UFS Transaction |

68.    Additionally, FedEx's characterization of these events as intentional and fraudulent acts may impair the Estate's claims under various insurance policies providing coverage for the Debtor's directors and officers. Once more, it would be perfectly acceptable for FedEx to sue non-Debtor agents of the Debtor for misrepresentations, fraud, and the like, in causing FedEx to continue to fund transactions to the Debtor. But FedEx's attempts to find criminal predicates for RICO for the acts of the same persons *after* the funds became Debtor property materially imperils some $25 million in insurance coverage. If a Court makes findings that various officers and directors of the Debtor committed criminal or quasi-criminal acts, those findings may estop the Trustee's D&O claims and indemnification under various insurance policies (as most policies exclude coverage for such acts). Quite clearly, the District Court Lawsuit impairs estate property, including claims for breach of fiduciary duty, fraudulent transfer, and indemnity rights.

### b.    Exercising Control Over Arguable Property of the Estate (Asserting Estate Claims)

69.    FedEx is asserting Estate Claims. It hardly matters what styling FedEx gives to its causes of action – it seeks a direct return to it of funds that left the Debtor's accounts under various fraudulent transfers to half a dozen transferees. As stated in Madoff, "even if the Florida Plaintiffs' claims assert direct injuries, they would nonetheless be deemed property of the estate under *Seven Seas* because they seek to recover fraudulent transferred funds." *Id.* at 433. "While their causes of action may differ in name, the Florida Plaintiffs seek to recover the very funds sought by the Trustee through his avoidance actions." *Id.* at 437. FedEx seeks to recover those very fraudulent

transfers that harmed the Debtor, but with the convenience of bypassing the Estate and the multitude of other creditors who are owed millions of dollars.

70.     For example, unjust enrichment and constructive trust (Cause Nos. 4 and 5) are two-sides of the same coin – constructive trust is an equitable remedy where a party would be unjustly enriched if allowed to keep the property in question. *Segner v. Sinclair Oil & Gas Company et al.*, 2012 WL 12885055, \*20 (N.D. Tex. 2012) (citing *Sheldon Petroleum Co. v. Pierce,* 546 S.W.2d 954, 958 (Tex. Civ. App. 1977)). In reality, the constructive trust and unjust enrichment claims are merely disguised causes of action for fraudulent transfer and FedEx cannot benefit from its artful pleading. *See, In re Teleservices Group, Inc.*, 463 B.R. 28, 36 (Bankr. W.D. Mich. 2012); s*ee also, Don Hanvey Oil Trust, Inc. v. Unit Texas Drilling, LLC*, 2011 WL 606264, \*10 (S.D. Tex. Feb. 16, 2011).

71.     Finally, that the funds predominantly originated at FedEx may at first blush appear important, but in the legal analysis it is irrelevant. Rather, it is the questionable nature of the relationship between the Goodmans and FedEx in the first instance which is the curious fact here. It appears that it was FedEx laundering products through Goodman Networks to take advantage of the Debtors' minority-owned business status. Note that FedEx fails to describe in any material detail what services the Debtor allegedly provides for its 0.2% cut of apparently tens or hundreds of millions of dollars. But it is no different than if FedEx were a true trade creditor, or a bank, or a shareholder having invested funds.  Once the transfer was made, the funds became the Debtor's property (which cannot credibly be denied to have occurred here). The Debtor's agents misused the Debtor, their authority, and the Debtor's property for whatever ill-conceived ends, and the claims for redress belong to the Estate, not the trade creditor, or bank, or shareholder.

### c.      FedEx Asserts Claims Against the Debtor

72.      FedEx's attempts to pretend that it is not suing the Debtor is gamesmanship – though not a named party, Goodman Networks is referenced ***three-hundred and ninety (390) times*** in the District Court Lawsuit.

73.      Section 362(a)(1) of the Bankruptcy Code, in relevant part, states that a petition operates as a stay of the commencement of an action or proceeding to recover a claim against the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(1). FedEx has alleged a breach of contract claim against the Debtor and a constructive trust claim that, if valid, is reduced to a monetary claim against the Debtor. *See supra* at section IV—. Indeed, the heart of the District Court Lawsuit is the allegation that the MSA and related Statement of Work required the Debtor to pay FedEx the amount financed less a fee of .2%. FedEx Compl. 742 and 749. FedEx alleges the funds paid to the Debtor were held in constructive trust for the benefit of FedEx. FedEx Compl. 741. Generally, the methods of measuring potential actual damages to FedEx are based on amounts due to FedEx from the Debtor pursuant to the MSA. FedEx asserts no other actual damages calculated independently from the amounts due under MSA. Each alleged injury suffered by FedEx is entirely subsumed within injury to the Debtor.

74.      Though dealing with third party fraudulent transfer actions, the Second Circuit Court of Appeals' decision in *Colonial Realty*, is instructive. In that case, the FDIC had a claim against the debtor in respect of loans to failed banks. The debtor made transfers to third parties and the FDIC sought to recover from those third parties. The Court, citing another case, found that "[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee," thus, the claim against the transferee is an "action … to recover a claim against the debtor" and subject to the automatic stay under § 362(a)(1). *In re Colonial Realty Co.*, 980 F.2d 125, 132 (2d Cir. 1992) (citing *In re Saunders*, 101 B.R. 303, 304–06 (Bankr.N.D.Fla.1989).

75.    In addition, the FedEx Complaint also seeks to establish the Debtor's liability to FedEx in other ways in violation of the automatic stay. For example, FedEx alleges throughout its Complaint that agents of the Debtor failed to advise FedEx that Goodman Networks was winding down. *See* FedEx Complaint Paras. 86; 136; 138; 141; and 151. Further, FedEx alleges that the Debtor's agents induced FedEx to continue funding transactions and intentionally omitted disclosing information to induce FedEx. FedEx can state all it likes that, "No claims are brought in this case against Goodman Networks," (FedEx Complaint at para. 415), but in order for FedEx to have any success on its claims, and as a predicate thereto, it will have to establish that the Debtor was responsible, at a minimum as a tool, in the schemes FedEx describes. The presiding Court's entry of a judgment in favor of the Debtor will necessarily require FedEx to prove that the Debtor was liable for theft, conspiracy, etc.

### d.    Stay-Related Relief Requested

76.    The Trustee will refer the Court to a recent instance where the Court laid out what should be the guiding light for any litigant pursuing claims against non-debtors but where a debtor was the instrumentality of the alleged harms:[5]

    a.    Litigation "shall be permitted to proceed … with respect to direct claims … against non-Debtor Defendants, insofar as such claims do not include claims against the Debtor or the estate, any claims of the Debtor or the estate, *or affect or impair any claims or causes of action of the estate against any person*…"

    b.    Without further Order from this Court, *the Plaintiffs may not pursue any cause of action that explicitly or implicitly alleges harm to the Debtor, that the Debtor, could have, as of the commencement of the case, brought against the Defendants*.  Any such action shall constitute, at least arguably, property of the estate subject to the automatic stay.

    c.    Without further Order from this Court, *the Plaintiffs may not pursue any cause of action that constitutes a claim for breach of fiduciary duty,*

---

[5] *In re With Purpose, Inc.*, Case No. 23-30246-mvl7, Order Modifying the Stay with Instructions, Dkt. No. 115, p. 2.

*mismanagement, self-dealing, conversion of [debtor property] or any claim based upon a harm to all investors or the enterprise.*

> d.    Without further Order from this Court, any damage calculation must exclude the consideration of the reduction in value of the [debtor's] enterprise.  Any damage calculation must only include the loss to the Plaintiffs … independent of damages to the Debtor itself.

77.    This Court should enter a similar order and stay FedEx's further prosecution of the District Court Lawsuit until a judgment on the merits of the Trustee's Original Complaint. FedEx should be required to confer with the Trustee prior to amending any Complaint.

## B.    <u>Irreparable Injury</u>

78.    As an initial matter, the Trustee submits that he does not have to prove this element in order to obtain the requested preliminary injunction. This is because the Trustee is seeking to enforce an existing injunction: the automatic stay.

79.    As the Fifth Circuit has held in an analogous situation, "[i]n actions for a statutory injunction, the agency need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits. A prima facie case of illegality is sufficient." *Commodities Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). This makes sense: one should not need an injunction to enforce an existing injunction.  *See Middleton-Keirn v. Stone*, 655 F.2d 609, 611 (5th Cir. 1981) ("We take the position that in such a case, irreparable injury should be presumed from the very fact that the statute has been violated").  *See also Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 905 F.2d 63, 67 (5th Cir. 1990) (Jones, J. concurring) ("[i]rreparable injury must be shown unless a statute unequivocally authorizes injunctive relief without such a showing"). Section 362(a) does not require any showing of injury as a condition of its effectiveness.

80.    Accordingly, a party complaining of a stay violation "need not show 'irreparable' harm . . .  The threatened violation of the automatic stay is sufficient grounds for the issuance of

this injunction." *Gumport v. ICC (In re Transcon Lines)*, 147 B.R. 770, 775 (Bankr. C.D. Cal. 1992) (considering issue in context of preliminary injunction to enforce the automatic stay). In other words, "[w]here an act would violate the automatic stay, irreparable harm is established by the violation since Congress, by legislatively staying such acts, has determined that they cause irreparable injury to the estate." *Official Committee of Unsecured Creditors v. PSS Steamship Co. Inc. (In re Prudential Lines Inc.)*, 107 B.R. 832, 835 n. 4 (Bankr. S.D.N.Y. 1989). As with the present case, "removal of property from an estate irreparably injures it," such that this element is *per se* met. *Beker Indus. Corp. v. Florida Land & Water Adjudicatory Comm'n (In re Beker Indus. Corp.)*, 57 B.R. 611, 623 (Bankr. S.D.N.Y. 1986); *accord Clarkson Co. Ltd. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976) (holding that the denial to a trustee of access to property of the estate "creates a *prima facie* showing of possible irreparable injury").

## C.   **Balance of Harms**

81.   This element is met because the threatened injury to the Trustee if the injunction is denied outweighs any harm to FedEx that will result if the injunction is granted.

82.   At its core, some court needs to judicially determine FedEx's claims of ownership of the 4352 Account, the funds therein, the constructive, resulting, and other trust claims thereto and to the transfers and proceeds thereof. None of the foregoing is automatic and requires a judicial determination. FedEx has sought as much, albeit in the wrong court.

83.   All that the Trustee seeks is for this Court to determine these issues, which are properly before this Court because FedEx is a creditor who filed a proof of claim asserting the same claims and remedies, it was a petitioning creditor who wanted the Debtor in Chapter 7, and it has actively participated in the Bankruptcy Case. It is for this Court to determine what is property of the Estate and the extent of FedEx's claims to property of the Estate. Therefore, it goes without

saying that this Court and this Court alone should make that threshold determination. And, until

the Court has had the ability to make that determination—which the Trustee will seek on an

expedited basis—no judicially cognizable harm can befall FedEx if it is temporarily restrained

from asserting these exotic claims before any other court.

**D.**     **Public Interest**

84.     Bankruptcy exists as a collective proceeding to determine respective rights in one

centralized, specialized forum. That is why Congress created this Court. The automatic stay exists

to protect against a race to the courthouse, while respective rights can be adjudicated. Respect for

the automatic stay is reinforced and required by *In re Chestnut*. The public interest is best served

by honoring these intentions of Congress and dictates of the Fifth Circuit, and permitting this Court

to do its job without a multiplicity of suits and subsequent collateral litigation regarding preclusive

doctrines. And, while the Trustee has no interest in protecting the various defendants sued by

FedEx (except his own subsidiaries), given that the FedEx dispute involves a large number of

defendants, many from out of state, all of whom will have to expend very large resources

responding to a 825 paragraph complicated RICO complaint, their interests as well are best served

by FedEx's litigation being temporarily halted as this Court sorts out the issues and adjudicates

the claims.

**E.**     **This Court Has Authority to Enjoin FedEx From Continuing to Pursue the District**
**Court Lawsuit.**

85.     A bankruptcy court has authority to issue an injunction to enjoin parties from

continuing to pursue litigation in another forum if that litigation violates the automatic stay. *Lykes*

*Bros. Steamship Co., Inc. v. Hanseatic Marine Svc, GmBH (In re Lykes Bros. Steamship Co., Inc.)*,

207 B.R. 282, 288 (Bankr. M.D. Fla. 1997); *Rhoten Constr. Co. v. Third Nat'l Bank (In re Rhoten*

*Constr. Co.)*, 22 B.R. 335, (Bankr. M.D. Tenn. 1982). More specifically, a bankruptcy court has

authority to issue an injunction to enjoin a party from continuing to pursue a lawsuit pending in

another federal district court if that lawsuit violates the automatic stay. *SN Liquidation, Inc. v. Icon*

*Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 585 (Bankr. D. Del. 2008). Thus, this Court

has authority to grant a preliminary injunction against FedEx to enjoin FedEx from continuing to

pursue the District Court Lawsuit.

## V.    CONCLUSION

For the reasons set forth herein in support of the Motion, the Trustee requests that the Court

grant the Motion and such other relief as it deems necessary and appropriate.

Respectfully submitted,

QUILLING, SELANDER, LOWNDS,
    WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

By:    */s/ Michael J. Quilling*
        Michael J. Quilling
        Texas Bar No. 16432300
        Joshua L. Shepherd
        Texas Bar No. 24058104

PROPOSED SPECIAL COUNSEL FOR
SCOTT M. SEIDEL, TRUSTEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served concurrently with the filing of the same (a) via the Court's CM/ECF noticing system upon all persons who have filed ECF appearances in this case and (b) via email and first-class mail, postage prepaid, on the following:

Robert Campbell Hillyer
Daniel W. Van Horn
Adam M. Langley
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
cam.hillyer@butlersnow.com
danny.vanhorn@butlersnow.com
adam.langley@butlersnow.com

Martin A. Sosland
Butler Snow LLP
2911 Turtle Creek
Suite 1400
Dallas, TX 75219
martin.sosland@butlersnow.com

COUNSEL FOR FEDEX

   _/s/ Joshua L. Shepherd_____
Joshua L. Shepherd