Daniel W. Van Horn, *Admitted Pro Hac*
Adam M. Langley, *Admitted Pro Hac*
R. Campbell Hillyer, *Admitted Pro Hac*
Butler Snow LLP
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200

Martin A. Sosland, TX Bar No. 18855645
Candice Carson, TX Bar No. 24074006
Butler Snow LLP
2911 Turtle Creek Blvd., Ste. 1400
Dallas, TX 75219
(469) 680-5502

Attorneys for FedEx Supply Chain Logistics & Electronics, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GOODMAN NETWORKS, INC., | ) | Case No. 23-31641-mvl-7 |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |

| | | |
|---|---|---|
| SCOTT M. SEIDEL, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 23-03091 |
| v. | ) | |
| | ) | |
| FEDEX SUPPLY CHAIN LOGISTICS | ) | |
| & ELECTRONICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC.'S
## MEMORANDUM IN OPPOSITION TO THE TRUSTEE'S
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

JURISDICTION ...................................................................................................... 4

FACTS ................................................................................................................... 8

LAW AND ARGUMENT ........................................................................................ 9

    A.  FSCLE Owns the Claims at Issue and Thus the Trustee Fails to Establish a Substantial Likelihood of Success on the Merits. ................................................................. 10

        (1) The Fraudulent Scheme Was Targeted at FSCLE – Not the Debtor and Not Other Creditors. ............................................................................................... 11

        (2) FSCLE Owns the RICO Claims Asserted. ........................................... 13

        (3) FSCLE Has Valid Claims for Theft, Fraud, and Unjust Enrichment Based on the Express Intent Not to Perform at the time the Invoices Post November 3 Were Sent. ....................................................................................... 16

        (4) Constructive Trust is an Appropriate Remedy for the Fraud Done to FSCLE. ..... 20

        (5) The Trustee Is Barred from Asserting Several of the Claims Against a Number of the Defendants. ............................................................................. 24

    B.  The Estate Does Not Face Any Irreparable Harm. ...................................... 27

    C.  The Harm to FSCLE in Granting an Injunction Is Severe. .......................... 29

    D.  The Public Interest Does Not Favor an Injunction. ..................................... 30

    E.  FSCLE Has Not Violated the Automatic Stay. ........................................... 31

        (1) FSCLE Has Not Brought Any Claims Against the Debtor. ..................... 31

        (2) FSCLE Has Not Asserted a Claim or Cause of Action that Belongs to the Estate. ............................................................................... 33

CONCLUSION ...................................................................................................... 34

CERTIFICATE OF SERVICE ............................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773 (N.D. Tex. Nov. 18, 2016) .......... 17

*Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384 (5th Cir.1984) ......................... 9

*Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475 (5th Cir. 1986) .......... 12, 16

*Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beam Systems, Inc.*, 566 B.R. 815 (W.D. Tex. 2017) ................................................................. 26

*Chiasson v. J. Louis Matherne and Assocs.,* 4 F.3d 1329 (5th Cir.1993) ....................... 22

*Clayton Mountain Dev., LLC v. Ruff*, 2021 WL 3414953 (Tex. App. – Eastland Aug. 5, 2021) ....................................................................................................... 21

*Commonwealth Oil Ref. Co. v. U.S.E.P.A.*, 805 F.2d 1175 (5th Cir. 1986) .................... 9

*Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195 (Tex. App. – San Antonio 1991) ..................................................................................... 20

*DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597 (5th Cir.1996) ....................... 29

*Edge Petroleum Operating Co. v. GPR Holdings, LLC*, 483 F.3d 292 (5th Cir. 2007) ........ 5

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, (5th Cir.1985) ................................................................................................ 28

*Finova Capital Corp. v. Lawrence*, 2000 WL 1808276 (N.D. Tex. Dec. 8, 2000) ............ 24

*Floyd v. Hefner*, 556 F.Supp.2d 617 (S.D. Tex. 2008) ......................................... 27

*Gray v. Sangrey*, 428 S.W. 3d 311 (Tex. App. – Texarkana 2014) ........................... 20

*Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996) .............................................. 13

*In re Adobe Energy, Inc*., 82 Fed. Appx. 106 (5th Cir. 2003) ................................ 18

*In re CEI Roofing, Inc.*, 315 B.R. 61 (Bankr. N.D. Tex. 2004) ............................... 5

*In re Chiron Equities, LLC*, 552 B.R. 674, 697–98, 2016 WL 3621008, (Bankr. S.D. Tex. July 1, 2016) ........................................................................................... 9

*In re Colonial Realty Co.*, 980 F.2d 125 (2nd Cir. 1992) ................................. 32, 33

*In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808 (Bankr. N.D. Tex. 1989) .......... 13

*In re Educ. Grp. Health Trust*, 25 F.3d 1281 (5th Cir. 1994) ............................. 8, 10

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 2007 WL 789141 (S.D. Tex. March 12, 2007 ............................................................................. 24, 25

*In re FoodServiceWarehouse.com, LLC*, 601 B.R. 396 (E.D. La. 2019) .............. 5, 6, 7, 9, 28

*In re GenOn Mid-Atlantic Development, LLC*, 42 F.4th 523 (5th Cir. 2022) ............... 5, 31

*In re Infinity Business Group, Inc.* 31 F.4th 294 (4th Cir. 2022) ........................... 25

*In re Jamuna Real Estate, LLC*, 2010 WL 2773395 (Bankr. E.D. Pa. July 13, 2010) ......... 14

*In re Kalispell Feed & Grain Supply*, 55 B.R. 627 (Bank. D. Mont. 1985) ................................ 13

*In re Leitner*, 236 B.R. 420 (Bankr. D. Kan. 1999) ...................................................... 21

*In re NE40 Partners, Ltd.*, 411 B.R. 352 (Bankr. S.D. Tex. 2009) ........................................ 20, 21

*In re Newpower*, 233 F.3d 922 (6th Cir. 2000) ........................................................... 22, 23

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) ..................................... 6, 8, 10, 15

*In re Today's Destiny, Inc.*, 388 B.R. 737 (S.D. Tex. 2008) .............................................. 24

*In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007) ............................................... 27, 31, 33

*In re Vantage Benefits Administrators, Inc*., 2021 WL 1815065 (N.D. Tex., May 5, 2021) ....... 24

*In re Wilborn*, 609 F.3d 748 (5th Cir. 2010) .............................................................. 5

*In re With Purpose, Inc.*, 654 B.R. 715 (Bankr. N.D. Tex. 2023) ........................... 5, 8, 10, 13, 15

*In re Zale Corp*., 62 F.3d 746 (5th Cir. 1995) .................................................... 5, 6, 7, 9

*Ingalls v. Gressett (In re Bradley)*, 326 Fed. Appx. 838 (5th Cir.2009) ..................................... 25

*Jones v. Hyatt Legal Services (In re Dow)*, 132 B.R. 853 (Bankr. S.D. Ohio 1991) .................... 26

*Kinsel v. Lindsey*, 526 S.W.3d 411 (Tex. 2017) .......................................................... 20

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192 (5th Cir. 2003) ........................... 9

*Matter of Approximately $80,600.00*, 537 S.W.3d 207 (Tex. App.—Houston [1st Dist.]
    2017) ................................................................................................. 11, 22

*Matter of Haber Oil Co., Inc.*, 12 F.3d 426 (5th Cir. 1994) ............................................. 21, 22

*Matter of Okedokun*, 968 F.3d 378 (5th Cir. 2020) ......................................... 11, 22, 30

*Matter of Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir. 1985) ............................................ 21

*Matter of Vitek, Inc.,* 51 F.3d 530 (5th Cir. 1995) ......................................................... 4

*Newman v. Link*, 866 S.W.2d 721 (Tex. App. – Houston [14th Dist.] 1993) ............................... 12

*Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191 (Tex. App. – Houston
    [14th Dist.] 2014) ....................................................................................... 20

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, (11th
    Cir. 2006) .............................................................................................. 25

*Picard v.. JPMorgan Chase & Co.*, 2011 WL 5170434 (S.D.N.Y. Nov. 1, 2011) ..................... 26

*Saint Paul Commodities, LLC v. Crystal Creek Cattle Co.*, 2012 WL 3135574 (N.D. Tex.
    Aug. 1, 2012) ....................................................................................... 19, 32

*Sherman v. Main Event, Inc.*, 2003 WL 251653 (N.D. Tex. Feb. 3, 2003) .................................. 25

*Sinclair Hous. Fed. Credit Union v. Hendricks*, 268 S.W.2d 290 (Tex. App. - Galveston
    1954) ................................................................................................. 22

*SPIC v. Bernard L. Madoff Investment Securities*, LLC, 429 B.R. 423 (Bankr. S.D.N.Y.
    2010) ................................................................................................. 15

*Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986) ............................................. 18, 32

*Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir.1994) ....................................................... 25

*Taylor v. State*, 450 S.W.3d 528 (Tex. Crim. App. 2014) ................................. 17, 18, 32

*Teachers Credit Union v. Hernandez*, 814 S.W.2d 195 (Tex. App. – San Antonio, 1991) ......... 12

*Texans for Free Entr. v. Tex. Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) ............................... 9

*Texas Co. v. Miller*, 165 F.2d 111 (5th Cir. 1947) ....................................................... 21

*Troxel v. Bishop*, 201 S.W.3d 290 (Tex. App. – Dallas 2006) .................................... 21

*United States v. Toney*, 598 F.2d 1349 (5th Cir. 1979) .......................................... 16

*Uranga v. Holiday Mkt., Inc.*, 2014 WL 349716 (N.D. Tex. Jan. 31, 2014) ............................. 32

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983) ................................. 32

**Statutes**

11 U.S.C. § 105 ............................................................................................... 4, 9

11 U.S.C. § 362 ............................................................................................ 27, 31

11 U.S.C. § 541(a)(1) ........................................................................................ 10

11 U.S.C. § 544 ................................................................................................. 26

28 U.S.C. § 1334 ............................................................................................. 4, 5

Restatement (Second) of Torts § 229 cmt. D (1965) ............................................... 22

Texas Civil Practice and Remedies Code §134.002 .................................................. 16

Texas Penal Code §31.03 ..................................................................................... 17

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

Comes now FedEx Supply Chain Logistics & Electronics, Inc. ("FSCLE" or "FedEx") and for its Memorandum in Opposition to the Trustee's Motion for Preliminary Injunction [Dkt. # 4 and 5] states as follows:

## **INTRODUCTION**

This is an adversary proceeding involving a fraud targeted at FSCLE and FSCLE's right to advance causes of action that are unique and particularized to it.  On October 27, 2023, FSCLE filed suit in the United States District Court for the Northern District of Texas against James Goodman, Jim Frinzi and a number of other persons and entities for the damages they caused FSCLE.  (Exhibit 1, the "District Court Lawsuit" or "Compl.").  The Trustee seeks to enjoin FSCLE from asserting some but not all of the causes of action in the District Court Lawsuit – causes of action that belong to FSCLE and are not property of the estate.

In late 2021 and early 2022, insiders within Goodman Networks, Inc. ("Goodman Networks" or "Debtor") hatched and implemented a plan to invoice FSCLE millions of dollars without any intent to perform those invoices for the purpose of creating a cashflow that they could then launder for their own benefit.

The commercial relationship between FSCLE and Goodman Networks, in practice, involved FSCLE purchasing certain inventory from Goodman Networks that FSCLE also sold to it.  In effect, Goodman Networks invoiced FSCLE, FSCLE paid Goodman Networks and then a reversing transaction occurred wherein all but less than 1% of the original amount paid by FSCLE to Goodman Networks came back to FSCLE from Goodman Networks.[1]

---

[1] In the Trustee's motion, the Trustee casts the relationship between FSCLE and Goodman Networks as one designed to create artificial minority business credits.  The aspersion cast at FSCLE is unnecessary and unwarranted.  On July 30, 2015, FedEx purchased a company called GENCO that owned ATC Logistics, the party that already had this contract in place and had negotiated the contract in the first place.  FedEx did not negotiate the original contract nor

In internal communications, Goodman Networks described the relationship with FSCLE as follows:

> GNET ATC, LLC has **automated** purchase order and invoice transactions in D365 (previously was automated in Great Plains) that account for the purchase of mobile device accessories from FedEx and sale back to FedEx at .2% margin.  In other words, the sales price is .2% higher than the purchase price. . . . Around the 15th of the following month, FedEx will confirm final pallet moves for the prior month and GNET ATC will invoice actual revenue in D365 which will be offset by the revenue reversing accrual from the previous month end.

(See Exhibit 2) (emphasis added).  Thus, each time Goodman Networks invoiced FSCLE there was to be a related reversing transaction back to FSCLE of all that FSCLE paid Goodman Networks less .2% and less payment for actual pallet moves.  The representation in each invoice Goodman Networks sent to FSCLE was that the reversing transaction would also happen.  This relationship worked well until November 2021.

Beginning on November 3, 2021, Goodman Networks insider and CEO Jim Frinzi directed that Goodman Networks was to "suspend all other payments to FedEx after this payment."  (See Exhibit 3).  Despite barring further payments to FSCLE, Frinzi caused Goodman Networks to continue to invoice FSCLE with no intent to engage in the reverse transactions.  Between November 3 and 23, 2021, Goodman Networks sent FSCLE thirty (30) separate batches of invoices representing 1,436 transactions with a dollar value of more than $36.6 million.  (See the Compl. at ¶¶ 152 – 182).  Frinzi and the other insiders did this with no intent to perform the reversing transactions.

On November 23, 2021, Frinzi authored a document saying, "Goodman Networks Incorporated (the 'Company') no longer has any remaining revenue source.  At this point in time,

---

did FedEx buy GENCO to obtain the contract.  Moreover, FedEx did not and does not need this particular contract to demonstrate its enduring commitment to doing business with minority, women, veteran and disabled owned businesses.

a Shareholder's Meeting will be requested to dissolve the Company." (See Exhibit 3). Despite this statement, Frinzi insisted that invoices continue to be sent to FSCLE. Between November 23 and December 18, 2021, Goodman Networks sent FSCLE nineteen (19) separate batches of invoices representing 717 transactions with a value of more than $8 million. (Compl. at ¶¶ 183 – 203). Frinzi and the other insiders did this with no intent to perform the reversing transactions and after the statement that Goodman Networks had no revenue sources and needed to dissolve. FSCLE paid Goodman Networks more than $66 million after November 3, 2021. (Compl. at ¶ 208).

In effect, the insiders used Goodman Networks to defraud FSCLE of tens of millions by sending FSCLE invoices with no intent to perform the reversing transactions associated with those invoices and while providing fraudulent and intentionally false technical excuses to FSCLE as to why repayment pursuant to the reversing transactions was delayed. The first stop in the path of laundering the funds back to themselves was the 4352 Account at Prosperity Bank which was used by Goodman Networks to hold payments from FSCLE pursuant to the automated process in place prior to the fraud beginning. The insiders then worked with the other defendants in the District Court Lawsuit to launder the money by removing the funds from Goodman Networks and sending it through a myriad of transactions.

The fact that the stolen funds from FSCLE went first to Goodman Networks and Goodman Networks is now in bankruptcy does not bar FSCLE from pursuing its claims and causes of action against the third parties who committed the fraud and then worked in concert to launder the money. The damages inflicted upon FSCLE are unique to it and are separate and apart from the Debtor. No other creditor can claim to be a victim of the specific fraud in question and the Debtor (and thus the Trustee) has no standing to claim injury from the fraud committed.

3

As set forth herein, the Trustee is barred from bringing a number of the claims asserted by FSCLE. FSCLE – and only FSCLE – may assert these claims. The Trustee does, however, have the right to assert other causes of action and claims that neither FSCLE nor any other creditor may bring including claims for breach of fiduciary duty and avoidance actions to set aside certain transfers provided the assets to be sought are assets of the estate. FSCLE does not seek to assert those claims. Instead, FSCLE seeks to assert its unique causes of action in parallel[2] with the Trustee to make sure that those who damaged FSCLE are brought to account for their wrongful acts to FSCLE.

The relief sought by the Trustee would merely add insult to injury and further harm FSCLE by denying it its right to pursue its own claims against third parties who are liable for the wrongful acts set forth in the District Court Lawsuit. The Trustee cannot show that the claims asserted are property of the estate and therefore fails to show a likelihood of success on the merits. The Court must therefore deny the relief sought by the Trustee.

## <u>JURISDICTION</u>

FSCLE agrees that the Court has jurisdiction to hear and resolve the question of whether to grant a preliminary injunction. 28 U.S.C. § 1334(b) and (e); 11 U.S.C. § 105(a). However, because the claims asserted by FSCLE are not claims that belong to the estate, the Court does not have jurisdiction to grant the relief sought by the Trustee. *See Matter of Vitek, Inc.,* 51 F.3d 530, 536 (5th Cir. 1995) (holding that if the property in question is not property of the estate, then the court has no authority to enjoin suits related to it).

The Court's subject matter jurisdiction is limited to bankruptcy cases and proceedings that

---

[2] In addition to the amounts defrauded it by third parties and then laundered, there are also amounts that FSCLE paid the Debtor prior to November 3, 2021 which would be general creditor claims. FSCLE thus hopes that the Trustee can recover as much as possible for the creditors. Further, FSCLE has every right to assert the full amount of its loss (both general claims and the loss from the fraud) in its proof of claim.

arise under the Bankruptcy Code, arise in a bankruptcy case, or are related to a bankruptcy case. 28 U.S.C. § 1334. A proceeding arises under the Bankruptcy Code if a plaintiff asserts a right created by the Bankruptcy Code. *In re Wilborn*, 609 F.3d 748, 752 (5th Cir. 2010); *In re With Purpose, Inc.*, 654 B.R. 715, 726 (Bankr. N.D. Tex. 2023). A proceeding arises in a bankruptcy case if the plaintiff asserts a claim that could not exist outside bankruptcy. *Id.* An action is "related to" a bankruptcy case if the outcome could conceivably affect the bankruptcy estate. *In re GenOn Mid-Atlantic Development, LLC*, 42 F.4th 523, 534 (5th Cir. 2022). "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankruptcy estate." *Edge Petroleum Operating Co. v. GPR Holdings, LLC*, 483 F.3d 292, 298 (5th Cir. 2007). Jurisdiction can only exist over a proceeding that does not arise under title 11 or in a case under title 11 if the matter relates to the estate itself and it affects the debtor. *In re Zale Corp.*, 62 F.3d 746, 752-55 (5th Cir. 1995). Neither shared facts between the proceeding and the conflict between the debtor and creditor nor considerations of judicial economy alone will justify the finding of subject matter jurisdiction over an otherwise unrelated proceeding. *In re With Purpose*, 654 B.R. at 726 (citing to *In re CEI Roofing, Inc.*, 315 B.R. 61,66 (Bankr. N.D. Tex. 2004)).

In *In re FoodServiceWarehouse.com, LLC*, 601 B.R. 396, 402 (E.D. La. 2019), the Eastern District of Louisiana was presented with an appeal of a motion for a preliminary injunction by the trustee in a chapter 7 case seeking to enjoin a creditor from asserting claims against third parties. The bankruptcy court denied in part and granted in part the requested injunction finding that the some of the claims asserted by the creditor against third parties were not assets of the estate but belonged to the creditor, and thus there was no "related to" jurisdiction to enjoin those claims. *Id.*

at 402-03 and 411.  However, the bankruptcy court also found that certain other claims belonged to the estate and thus could be enjoined.  *Id*. at 403 and 411.

Judge Zainey ruled that the bankruptcy court had no "related to" jurisdiction to enjoin <u>any</u> of the claims.  *Id*. at 411-412.  As to the question of whether a claim was the property of the estate or belong to the creditor asserting it, Judge Zainey noted that, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Id*. at 405 (citing to *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008)).  "Therefore, the existence of common parties and shared facts between the debtor's bankruptcy and the creditor's cause of action does not necessarily mean that the claims asserted by the creditor are property of the estate." *Id*.  Citing to the analysis set forth in *Seven Seas*, 522 F.3d 575, Judge Zainey wrote that whether a particular claim belongs to the estate or to the creditor turns on whether the debtor cold have raised the claim at the commencement of the case.  *FoodServiceWarehouse.com*, 601 B.R. at 406.  In other words, if the debtor lacks standing to assert the claim, then the claim is not property of the estate, is not subject to the automatic stay found in 11 U.S.C. § 362 and the bankruptcy court lacks "related to" jurisdiction to enjoin those claims.  *Id.* at 406.  Judge Zainey examined the claims asserted by the creditor and found they all belonged to the creditor and not the estate.  *Id.* at 410-412.  Therefore, the bankruptcy court was affirmed in its decision to deny an injunction based on a lack of jurisdiction to grant the injunction and reversed to the extent that it found any of the claims belonged to the estate.  *Id*.

The trustee appealed the denial of an injunction arguing that some of the claims sought recoveries that could also go to the estate and thus there was a race to recover assets.  In *Zale*, 62 F.3d at 759-761, the Fifth Circuit found that an injunction could be issued under "unusual

circumstances" to bar the diminishment of assets that could be recovered for an estate. "Such unusual circumstances include when the nondebtor and the debtor enjoy such an identity of interests such that the suit against the nondebtor is essentially a suit against the debtor, and when the third party action will have an adverse impact on the debtor's ability to accomplish _reorganization_." *Id.* at 761 (emphasis added). "Absent a finding that such unusual circumstances exist, the court may not enter an injunction of the third party action." *Id.* Citing to and distinguishing *Zale*, Judge Zainey noted that *Zale* was a chapter 11 reorganization case and that bankruptcy jurisdiction extends more broadly in a chapter 11 reorganization case than it does in a chapter 7 liquidation case. *FoodServiceWarehouse.com*, 601 B.R. at 411. *FoodServiceWarehouse.com* was a chapter 7 liquidation, thus Judge Zainey found that there should have been no injunction against pursuing assets that could have also been recovered for the estate and that there was no "related to" jurisdiction to issue an injunction against those claims. *Id.* at 411-412. Judge Zainey ruled that:

> The bankruptcy court was also unmoved by the Trustee's argument that Pride and the estate would be competing for the same limited pool of funds. The bankruptcy court specifically found this situation insufficient justification to enjoin Pride's claims, even if temporarily.[3] The bankruptcy court was not persuaded that such an injunction should issue in the absence of an extraordinary showing of damage to the estate. That showing was simply not present in this case.

> This Court agrees. Section 105(a) allows for an order, in this case a temporary injunction, *if it is necessary or appropriate to carry out the provisions of Title 11.* The Trustee's confessed purpose in enjoining Pride's claims is to clear the field of competition from any other claimants when pursuing FSW's claims against LaPorte so that the Trustee can obtain the entirety of the available insurance proceeds without interference from Pride. This way all of the creditors, including Pride, can share in the benefits of the Trustee's efforts. To be sure, equality of distribution among creditors is an important general policy of bankruptcy (internal citations omitted), but Pride is not similarly-situated to the other creditors who do not possess a personal cause of action against LaPorte for direct injury. No principle of

---

[3] In *Zale*, the Fifth Circuit found that if a temporary injunction was warranted under "unusual circumstances" it was only warranted during the pendency of the bankruptcy estate. *In re Zale*, 62 F.3d at 760. There was no jurisdiction to issue a permanent injunction against the creditor pursuing claims against third parties. *Id.*

bankruptcy law suggests that Pride should be impoverished on its direct claims so
that other creditors will be better off.

*Id*. (emphasis in original).  Thus, this Court certainly has jurisdiction to decide the preliminary

injunction.  If the Court finds that the claims asserted by FSCLE belong to the estate, it has

jurisdiction to issue an injunction against FSCLE pursuing them during the pendency of the

bankruptcy.  If, however, the Court finds that the claims belong to FSCLE, then the Court would

lack jurisdiction to issue any injunction against those claims proceeding forward.

## FACTS

The Trustee's brief contains a fact section.  When evaluating whether a claim is property

of the estate or of the creditor, a court does not consider whether the creditor's allegations are

sufficient to state a cause of action under the law upon which it relies, or to speculate as to what

set of facts might ultimately be proven in support of recovery.  *Seven Seas Pertrol*., 522 F.3d at

587.  The fact that the creditor ultimately may be unable to prevail on the claim does not render

the claim property of the estate.  *Id*. at 587-88.  That the third party defendant may have a valid

and meritorious defense on the merits goes to the resolution of the claim and does not determine

what is or what is not property of the bankruptcy estate.  *In re Educ. Grp. Health Trust*, 25 F.3d

1281, 1286 (5th Cir. 1994).  The actual merits of the claims asserted by FSCLE are not under

scrutiny when evaluating whether to issue an injunction or to deny one.  *With Purpose*, 654 B.R.

at 725.  Thus, most of the "facts" set forth in the Trustee's brief are irrelevant to the Court's inquiry.

All that is relevant is the date of the bankruptcy petition, the fact that the case is being administered

as a chapter 7 liquidation and the parties, the allegations and causes of actions set forth in FSCLE's

complaint.  The existence of each of these is not reasonably in question.  That the Trustee has filed

certain adversary claims against some of the same parties is irrelevant[4] to the question of whether

the claims asserted by FSCLE belong to FSCLE or the estate.

## LAW AND ARGUMENT

A preliminary injunction is an "extraordinary remedy." *Texans for Free Entr. v. Tex.*

*Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013).   When considering whether to issue a

preliminary injunction pursuant to 11 U.S.C. § 105(a), a bankruptcy court must consider the

traditional factors governing preliminary injunctions issued pursuant to Rule 65 of the Federal

Rules of Civil Procedure.   *Zale*, 62 F.3d at 765.   In this case, the Trustee bears the burden of

proving: (1) a substantial likelihood of success on the merits [that the claims at issue are property

of the estate]; (2) a substantial threat that the estate will suffer irreparable injury if the injunction

is not granted; (3) the threatened injury to the estate outweighs the threatened harm an injunction

may cause the party against which the injunction is sought; and (4) the public interest will be

served by the granting of the injunction.   *Id.*; *Commonwealth Oil Ref. Co. v. U.S.E.P.A.*, 805 F.2d

1175, 1189 (5th Cir. 1986).   A preliminary injunction is an extraordinary remedy which should

not be granted unless the party seeking the injunction clearly carries the burden on all four

elements.   *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003).

The Trustee has the burden of persuasion on each of the four elements.   *Apple Barrel Productions,*

*Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984); *see also In re Chiron Equities, LLC,* 552 B.R.

674, 697–98, 2016 WL 3621008, at *18 (Bankr. S.D. Tex. July 1, 2016).

Because the claims at issue belong to FSCLE, the Trustee is unable to establish a substantial

likelihood of success on the merits and unable to show harm to the estate.   The harm to FSCLE if

---

[4] The Trustee is in essence making the same "race to the courthouse" arguments made by the trustee in
*FoodServiceWarehouse.com,* 601 B.R. at 411-12, and rejected by the bankruptcy court and Judge Zainey
therein.

an injunction is issued substantially outweighs theoretical harm to the estate. Finally, the public interest does not favor enjoining claims against third parties where the Trustee is barred from bringing the claims or the claims are not assets of the estate.

**A.   FSCLE Owns the Claims at Issue and Thus the Trustee Fails to Establish a Substantial Likelihood of Success on the Merits.**

The filing of a bankruptcy petition creates an estate that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes "rights of actions" such as claims based on state or federal law. *Seven Seas Petrol.*, 522 F.3d at 584. If a cause of action belongs to the bankruptcy estate, the Trustee has exclusive standing to assert the claim. *Educators Group Health Trust*, 25 F.3d at 1284. If, however, a cause of action belongs solely to the estate's creditors, the Trustee has no standing to bring the cause of action. *Id.*; *With Purpose*, 654 B.R. at 721.

Whether a particular cause of action belongs to the estate depends on whether under applicable law the Debtor could have raised the claim as of the commencement of the case. *Id.* As part of the inquiry, the Court must look at the nature of the injury for which relief is sought and consider the relationship between the Debtor and the injury. *Seven Seas*, 522 F.3d at 584.

"If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *With Purpose*, 654 B.R. at 721. "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.* at 721-22 (citing to *Educators Group Health Trust*, 25 F.3d at 1284)

**(1)    The Fraudulent Scheme Was Targeted at FSCLE – Not the Debtor and Not Other Creditors.**

The fraudulent scheme in this case was targeted at FSCLE.  As alleged in the District Court Lawsuit, Jim Frinzi and James Goodman made the decision to stop further payments to FSCLE while ordering Goodman Networks to keep sending FSCLE invoices to be paid knowing that they and Goodman Networks had no intention to perform the reversing transactions.  (Compl. at ¶¶ 10, 13, 23-24, 85-132).  The funds FSCLE paid pursuant to this fraud went exclusively to an account at Prosperity Bank, the 4352 Account.  (Compl. at ¶ 118).  Frinzi and others within Goodman Networks even referred to the 4352 Account as the "FedEx account" and as containing the "FedEx trust funds."  (Compl. at ¶ 135).  The fraud and theft FSCLE seeks to redress is the fraud and theft that caused it to send money to Goodman Networks in the first place under these false pretenses.

As alleged in the Complaint, the wire fraud and the fraudulent representations included the sending of invoices to FSCLE on and after November 3, 2021 when Frinzi, James Goodman and Goodman Networks made the decision not to perform any further.  (Compl. at ¶ 151 – 214).  FSCLE does not assert that the subsequent transfer of funds out of the 4352 account is the **<u>original</u>** theft or fraud that forms the basis of its claims and causes of action.  Rather, the movement of the funds out of the 4352 Account is nothing more than the next step in the chain to **<u>continue</u>** to steal the funds, defraud FSCLE and launder the funds for the defendants' own use.

This is not a case in which the funds were lawfully obtained by Goodman Networks from FSCLE on or after November 3, 2021.  See *Matter of Okedokun*, 968 F.3d 378, 390 (5th Cir. 2020) (*citing Matter of Approximately $80,600.00*, 537 S.W.3d 207, 211 (Tex. App.—Houston [1st Dist.] 2017) (holding that the party obtaining stolen property does not obtain legal title to it.)  Frinzi provided written instructions on that day to stop all other payments to FSCLE (<u>Exhibit 2</u> and Compl. at ¶ 115).  No one with Goodman Networks informed FSCLE that there would be no

reversing transactions. (Compl. at ¶ 116). To the contrary, Frinzi instructed others to continue to stall FSCLE and provide a cover story as to why no payments were going back to FSCLE. (Compl. at ¶¶ 117, 125, 126, 133, 136, 139). Despite making the decision that they would not pay FSCLE any further funds on or after November 3, 2021, Goodman Networks sent FSCLE hundreds of invoices demanding tens of million in payments even after Frinzi wrote that Goodman Networks was effectively defunct. (See the Compl. at ¶¶ 130, 152 – 203). The fraud here was specifically targeted at FSCLE.

This is not a case in which the harm is general to all creditors or to Goodman Networks. FSCLE agrees that its payments to Goodman Networks prior to November 3 are general claims and should be treated in conformity with other creditor claims. FSCLE filed a proof of claim that includes these claims as a subset. The world changed on November 3, 2021. What was an ordinary course of commercial dealing transformed into fraud aimed at FSCLE. No other creditor has remotely similar claims based on the acts on and after November 3, 2021. FSCLE has a unique, direct and particularized set of claims from these acts that simply do not belong to the Trustee or to any other creditor.

The other defendants are largely sued for either being in a conspiracy to accomplish this theft and fraud or for aiding and abetting these unlawful acts. *See Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485-86 (5th Cir. 1986) (liability for aiding and abetting a civil RICO enterprise); *United States v. Westbo*, 746 F.2d 1022, 1025 (5th Cir. 1984) (one who enters a civil conspiracy is becomes liable for the prior conduct and remains liable for subsequent conduct of others); *Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 198-99 (Tex. App. – San Antonio, 1991) (liability for those who received benefits from fraud even if committed by others); and *Newman v. Link*, 866 S.W.2d 721, 725 (Tex. App. – Houston [14th Dist.] 1993)

(constructive trust imposed over those who received the improperly obtained property even if they did not participate in the original wrong).

In *With Purpose*, 654 B.R. 715 at 723, this Court analyzed whether claims asserted by a creditor against third parties were claims of the estate or claims that belonged to the creditor. The Court noted that misrepresentations made to get that creditor to invest in the debtor were particularized to that creditor and were distinguishable from misrepresentations made after an investment in a company. *Id*. The Court noted that the misrepresentations and unlawful acts in *With Purpose* did not damage the debtor and in fact benefited it. *Id*. The same is true in this case.

The misrepresentations to FSCLE were the continued invoicing of FSCLE with no intent to perform the reversing transactions and the lies told to FSCLE as to why the reversing transactions were delayed. Only FSCLE could have relied on those misrepresentations – not the Debtor and not any other creditors. Goodman Networks was not injured by those misrepresentations and in fact benefited from it. Just as in *With Purpose*, the Court must find that these claims belong to FSCLE.

### (2)      FSCLE Owns the RICO Claims Asserted.

In *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 815-16 (Bankr. N.D. Tex. 1989), the Northern District of Texas Bankruptcy Court was tasked with determining whether individual creditors could assert claims, including RICO claims, against third parties for damage to them as opposed to damage to a partnership. The court ruled that the individual creditors' claims, including RICO claims, were not property of the estate and could not be asserted by the trustee or a committee of creditors standing in the shoes of the trustee. *Id.*; *see also Grimmett v. Brown*, 75 F.3d 506, 515-16 (9th Cir. 1996) (creditor asserting RICO claim may separately assert the claim and does not have to wait for the parallel bankruptcy proceeding to run its course); *In re Kalispell Feed & Grain Supply*, 55 B.R. 627, 629 (Bank. D. Mont. 1985) (creditor may bring a

separate RICO claim parallel to a bankruptcy proceeding).

The cases cited by the Trustee are all distinguishable and do not stand for the proposition that FSCLE either has no RICO claim or that FSCLE's RICO claim is property of the estate. The Trustee cites to *Holmes v. SPIC*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), for the proposition that FSCLE must prove direct causation as to each and every defendant against whom a RICO claim is asserted. (Trustee's Brief at ¶ 64). *Holmes* is a securities fraud case and essentially has nothing to do with the case before this court other than the cite taken completely out of context that causation is a required element of a RICO claim. FSCLE does not dispute that causation is a required element. However, in *Holmes* the lack of causation was found because the plaintiffs in that case sued for alleged injury for <u>not</u> investing in certain manipulated securities and thereby missing out on the artificial rise in the securities. *Id*. at 259. There was no showing that the plaintiffs had relied upon any particular representation to decide not to invest in a security. *Id*. *Holmes* is simply inapplicable to this case.

The Trustee similarly cites to and relies upon *In re Jamuna Real Estate, LLC*, 2010 WL 2773395, *9 (Bankr. E.D. Pa. July 13, 2010) for the proposition claims derivative of harm sustained to another will not suffice to assert a claim under RICO. (Trustee's Brief at ¶ 64). FSCLE does not dispute that general proposition of law. However, the actual facts and holding in *Jamuna* support FSCLE's position. In *Jamuna*, the RICO complaint alleged that there were misrepresentations that induced a loan, lies as to what the loan was for, theft of the funds obtained by the loan, lies about what happened with the loan proceeds and then acts with others to launder the stolen funds. *Id.* at *2. Those facts are similar to allegations brought by FSCLE in this case. In *Jumana*, the court held the fraudulent loan and the subsequent effort to launder the stolen funds constituted a RICO enterprise. *Id*. at *3. The *Jumana* court also held that there was sufficient

direct connection between the RICO acts and the damage to the plaintiff because the plaintiff had been defrauded and then the other acts were undertaken to launder those stolen funds. *Id.* at *10. Those facts and that holding support FSCLE claims rather than undermine them.

The Trustee also erroneously relies upon *SPIC v. Bernard L. Madoff Investment Securities*, LLC, 429 B.R. 423 (Bankr. S.D.N.Y. 2010) for the proposition that an injunction can be issued against creditors asserting RICO claims against third parties. (Trustee's Brief at ¶ 65). Again, FSCLE does not dispute the general proposition that an injunction against bringing a RICO claim against third parties can be reasonable if the claims asserted belong to the estate and not the individual creditors. That is what the *Madoff* case found – that the claims were general and belonged to the estate. The court specifically found that the creditors in that case could not point to a misrepresentation made to their clients and instead were relying upon damage to all who held an interest in the Madoff ponzi scheme. *Id.* at 431-32. Here, FSCLE does assert a particularized injury, the misrepresentations, wire fraud and theft that caused FSCLE to send money to Goodman Networks after November 3 and then the subsequent effort to launder those specific funds. FSCLE does not rely upon generalized injury.

Of course, many of the Trustee's arguments really go to his interpretation of the merits of FSCLE's RICO claims as opposed to whether those claims belong to the estate or to FSCLE. As this Court has noted, when considering whether a claim belongs to the estate or to FSCLE, the Court is not to delve into the merits of the claims. *With Purpose*, 654 B.R. at 724. Additionally, the Fifth Circuit has made it clear that "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Seven Seas*, 522 F.3d at 585. Thus, the fact that FSCLE has RICO claims predicated upon money laundering for the specific dollars stolen and defrauded from it and

the bankruptcy estate may also have certain claims to recover certain funds does not render FSCLE's RICO claim property of the estate. The point of stealing the funds from FSCLE in the first place was to launder those funds back to Frinzi, Goodman and others. This is not a case where funds otherwise owed to Goodman Network went to Goodman Network after November 3 and then were laundered in a <u>first</u> theft from Goodman Networks. The money laundering efforts that occurred in 2021and 2022 were a continuance of the enterprise to steal the funds from FSCLE in the first place (as opposed to the sums paid to Goodman Networks prior to November 3). Thus, those who worked with Frinzi, James Goodman and others to support the original theft and to launder the funds back to them are each fully liable for the entire damage done to FSCLE. See *Armco*, 782 F.2d at 485-86 (RICO liability for aiding and abetting predicate acts); *United States v. Toney*, 598 F.2d 1349, 1355 (5th Cir. 1979) (co-conspirators under RICO conspiracy are liable for all the acts of other members of the enterprise). In addition, RICO carries with it the prospect of treble damages. That means that these co-conspirator third parties are each liable to FSCLE in amounts that far exceed the claims that the Trustee can bring. FSCLE has the right to assert its RICO claims for the particularized harm done to it and the Trustee has a right to seek claims available to it.

> **(3)**    **FSCLE Has Valid Claims for Theft, Fraud, and Unjust Enrichment Based on the Express Intent Not to Perform at the time the Invoices Post November 3 Were Sent.**

The Texas Civil Liability Theft Act[5] provides a civil remedy for criminal theft. Texas Civil Practice and Remedies Code §134.002. Pursuant to the Act, "theft means unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03 . . . of the Penal Code."

---

[5] One of the reasons FSCLE filed the District Court Lawsuit when it did was the statute of limitations associated with this statute. Trustee's counsel repeatedly told FSCLE to file its claims and the statute of limitations on this claim was fast approaching.

*Id*. Pursuant to Section 31.03 of the Penal Code, "a person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property." Texas Penal Code §31.03.

In *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014), the Court of Criminal Appeals held that theft under § 31.03 can be shown in cases where there is a contract between the victim and the accused if "at the time that money is exchanged pursuant to the contract, the accused either intends not to, or at least knows he will not, perform his part of the bargain." *See also AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, *4 (N.D. Tex. Nov. 18, 2016) ("Deception" under the Civil Liability Theft Act includes inducing action with no intent to perform one's part of a transaction or contract). Courts are to look at the events occurring before, during and after commission of the theft to determine if the accused had the intent not to perform the contract. *Taylor*, 450 S.W.3d at 536. "A contractor may yet be found guilty of theft if, at some point after formation of the contract, he formulates the requisite intent to deprive and appropriate <u>additional</u> property by deception, that is induces his customer to make further payment on the contract while <u>no longer intending to perform,</u> or at least knowing he will not." *Id*. at 537 (emphasis added). "Moreover, the fact that partial or even substantial work has been done on a contract will not invariably negate either the intent to deprive or the deception necessary to establish the unlawfulness of the initial appropriation." *Id*. at 537.

*Taylor* was a case in which a contractor induced customers to pay additional sums after the contract had been signed on the promise to perform certain acts. However, at the time those additional payments were induced, the contractor was in financial trouble and had no intention to perform. Rather, the contractor took the funds for his own purposes. The facts of *Taylor* are very similar to the theft committed by Frinzi, James Goodman and others aligned with them. The contract between FSCLE and Goodman Networks went back several years and until November 3,

2021, there was performance by both sides.  Goodman Networks would invoice FSCLE.  FSCLE would pay those invoices and Goodman Networks would then engage in the reversing transaction by which all but less than 1% of the amount paid by FSCLE to Goodman Networks was sent back to FSCLE.  However, by November 3, 2021, Frinzi expressly stated that there would no further payments to FSCLE.  Goodman Networks was in financial trouble by then.  Thus, each invoice sent to FSCLE on or after November 3, 2021 came with no intention to perform the matching reversing transaction and no intention to perform.  FSCLE would not have sent any funds to Goodman Networks after November 3 had it been informed that there would be no reversing transactions.  As with the contractor in *Taylor*, Frinzi, James Goodman and those associated with them used the stolen funds for their own benefit.  FSCLE thus has a valid claim for theft for all invoices sent to it on or after November 3, 2021.

Similarly, a claim for fraud may be based on "a promise to do an act in the future . . . when made with the intention, design and purpose of deceiving with no intention of performing the act." *In re Adobe Energy, Inc*., 82 Fed. Appx. 106, 112 (5th Cir. 2003); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (when one enters into a contract with no intention to perform, they may be sued for fraud).  Based on both the actual contract that existed between FSCLE and Goodman Networks and the course of performance over years, when Goodman Networks sent an invoice to FSCLE for payment, that invoice came with the representation that the reversing transaction sending all but less than 1% back to FSCLE would be made the following month.  Goodman Networks was simply not entitled (ever) to retain more than something less than 1% of the total originally paid by FSCLE.  Sending invoices with no intention to perform the reversing transaction is a representation with no intent to perform in the future.

In *Saint Paul Commodities, LLC v. Crystal Creek Cattle Co.*, 2012 WL 3135574, *4 (N.D.

Tex. Aug. 1, 2012), the Northern District of Texas was presented with the question whether conduct in which one party with a contract with another could constitute breach of contract, fraud and liability under the Texas Civil Liability Theft Act. In the *Saint Paul* case, the aggrieved party originally filed suit for breach of contract and obtained summary judgment for the breach of contract. *Id.* at *1. In post-judgment discovery, Saint Paul learned that there had been no intent to perform at the time the defendant had induced action by Saint Paul that was the basis of the original breach of contract claim. *Id.* at *2. Thus, Saint Paul filed a new lawsuit based on the same conduct as the first lawsuit but in the new lawsuit asserted claims for fraud and under the Texas Civil Liability Theft Act. *Id.* The defendants moved to dismiss the new lawsuit arguing the prior lawsuit acted as *res judicata* to bar the second lawsuit. *Id.* The Northern District of Texas rejected the *res judicata* argument finding that even though the breach of contract, fraud and civil theft liability claims shared the same operative facts, each claim had sufficiently different elements to state valid causes of action.

Specifically, the court found that the civil theft liability act claim had additional elements not required to prove breach of contract. *Id.* at *4. For purposes of the civil liability theft statute, "deception" includes promissory performance that is likely to affect the judgment of another in a transaction without the intention to perform or knowing that performance is unlikely. *Id.* "Thus, civil theft includes the element of intent, which is not present in a breach of contract claim." *Id.* Denying the motion to dismiss, the Northern District of Texas held, "despite arising from the same business transaction, the sets of claims are not so similar so as to bar the second suit under *res judicata.*" *Id.* at *4-5. *Saint Paul* is yet another example of a case in which claims for civil theft and fraud were permitted to move forward despite the existence of a contract between the plaintiff and the defendant.

Liability for civil theft and fraud extends to those who knew of the unlawful acts and benefited from them. *See Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 198-99 (Tex. App. – San Antonio 1991) (holding that all those who participated in the fraud or who received benefits therefrom are liable in damages to the party defrauded). Similarly, it is not essential for FSCLE to prove that each and every defendant made a misrepresentation to it to sue the defendants for liability in fraud. *In re NE40 Partners, Ltd.*, 411 B.R. 352, 360-61 (Bankr. S.D. Tex. 2009) (holding that parties that did not make a misrepresentation may be held liable for fraud if they either acquiesced in the misrepresentation or had knowledge of it and benefited from it.) Finally, a corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third parties even though they performed acts as agents of a corporation. *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 201 (Tex. App. – Houston [14th Dist.] 2014). Thus, whether it is Frinzi, James Goodman or any of the others who participated or benefited from the theft and fraud perpetrated against FSCLE, FSCLE has a cause of action to sue them for the damage done to it.

### (4)   Constructive Trust is an Appropriate Remedy for the Fraud Done to FSCLE.

The Trustee does not appear to dispute that FSCLE may have a cause of action for fraud but does dispute that FSCLE may seek a constructive trust[6] as a remedy for that fraud. (Trustee's Brief at ¶¶ 60-62). A constructive trust is a legal fiction, a creation of equity to prevent a wrongdoer from profiting from her wrongful acts. *Gray v. Sangrey*, 428 S.W. 3d 311, 315 (Tex. App. – Texarkana 2014). Constructive trusts are remedial in character and have the broad function of remediating wrongs or unjust enrichment in basic principles of equity and justice. *Id.*

---

[6] FSCLE agrees that a constructive trust is a remedy for a fraud and not a separate cause of action. *Kinsel v. Lindsey*, 526 S.W.3d 411, 425 (Tex. 2017).

To obtain a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship or underline actual fraud, (2) unjust enrichment, and (3) tracing of an identifiable res. *Id.*; *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App. – Dallas 2006) (emphasis added).   The imposition of a constructive trust is an available remedy where there has been a showing of actual fraud.   *NE40 Partners*, 411 B.R. at 368.   The constructive trust attaches when the fraud is committed, and the funds or property are transferred to the wrongdoer.   *Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1114 (5th Cir. 1985); *Texas Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947); *In re Leitner*, 236 B.R. 420, 424 (Bankr. D. Kan. 1999) ("Although a constructive trust may not be judicially decreed until many years subsequent to the transaction giving rise to the trust, the accepted theory is that the constructive trust is in existence at the inception of the transaction, ... and the beneficiary is possessed with an equitable interest in the trust property prior to the declaration of the constructive trust.")   The constructive trust is imposed not only on the wrongfully taken property but also the proceeds or revenues generated from the property.   *Clayton Mountain Dev., LLC v. Ruff*, 2021 WL 3414953, *12 (Tex. App. – Eastland Aug. 5, 2021).

First, it is important to note that FSCLE seeks a constructive trust over the funds stolen from it in the District Court Lawsuit and not yet in the bankruptcy court.   FSCLE is cognizant that the proper vehicle to assert a constructive trust *in a bankruptcy case* is to initiate an adversary proceeding.   *Haber Oil,* 12 F.3d at 437-38.   FSCLE has not yet filed such an adversary proceeding in this bankruptcy for at least two reasons: (1) as a practical matter, there has not yet been a recovery of funds into the estate over which FSCLE contends there is constructive trust, and (2) the pre-November 3, 2021 payments by FSCLE to the debtor are not subject to a constructive trust.

Most importantly, Texas law[7] makes clear that "[t]he general rule is that when property is stolen, the party who acquires the stolen property does not acquire its title." *Matter of Okedokun*, 968 F.3d 378, 390 (5th Cir. 2020) (*citing Matter of Approximately $80,600.00*, 537 S.W.3d 207, 211 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)). Rather, "title remains with the original owner, who can recover the property[8] or its value from whomever has received it." *Id*. Where property held by the debtor is stolen, the stolen property, while appearing in legal form to be property of the debtor, is not property of the estate because the equitable title resides in the victim of the stolen property. *Id*.; *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 435 (5th Cir. 1994). Thus, the estate in this case does not and cannot include the funds stolen from FSCLE and FSCLE is free to pursue its claims for a constructive trust on those stolen funds. The Trustee's argument that once the stolen funds went into a Goodman Networks' bank account that the funds became assets of the estate (Trustee's Brief at ¶ 62) is therefore both factually and legally in error and is not a basis to enjoin FSCLE's causes of action.

In *In re Newpower*, 233 F.3d 922 (6th Cir. 2000), the Sixth Circuit examined whether stolen funds were or were not assets of the bankruptcy estate of the thief and thus subject to the automatic stay. Like the Fifth Circuit, the Sixth Circuit first determined that the person or entity which steals money or property does not obtain any title to the property stolen. *Id*. at 929 (citing to Michigan law and to the Restatement (Second) of Torts § 229 cmt. D (1965)). On that basis, the Sixth Circuit held that, "the debtor's bankruptcy estate has no property interest in such embezzled funds which

---

[7] In the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankrupt and its creditors is defined by state law. *Chiasson v. J. Louis Matherne and Assocs.*, 4 F.3d 1329, 1334 (5th Cir.1993).
[8] One exception to this rule is stolen money. *Okedokun*, 968 F.3d at 390. "One who receives money which has been illegally obtained by a third party in due course of business, in good faith, and for valuable consideration, can keep it without liability to him from whom it was stolen." *Sinclair Hous. Fed. Credit Union v. Hendricks*, 268 S.W.2d 290, 295 (Tex. App. - Galveston 1954). In its complaint, FSCLE alleges that the third parties which received the stolen FSCLE funds knew of their original source. (e.g. Compl. at ¶ 318). Thus, the exception would not apply to FSCLE's complaint.

are now in the hands of third parties. As discussed, debtor never had a legal interest in such funds and appellants should be allowed to pursue third party recipients to recover embezzled funds and property traceable to such funds to the extent that the law allows." *Id*. at 931. The Sixth Circuit did find that if the debtor had any property purchased with the stolen funds, the property purchased and still in the debtor's possession would be assets of the estate. *Id*.

Here, all the funds stolen from FSCLE were removed from a Goodman Networks bank account long before the bankruptcy petition was granted. None of those funds were used to purchase anything that went back into Goodman Networks' possession or control. Rather, as in *Newpower*, the stolen funds here went to persons and entities other than Goodman Networks. Indeed, that was the point of the enterprise, conspiracy and scheme as alleged by FSCLE. The funds were stolen from FSCLE and then laundered through others to Frinzi, James Goodman and entities controlled by them. As in *Newpower*, the Court should find that the stolen funds are not and were not assets of the estate and should find that FSCLE is free to pursue those funds from those who hold them now.

The Trustee's other attacks on FSCLE's right to pursue a constructive trust remedy similarly fail. The Trustee claims that there has been no showing of any fraud. (Trustee's Brief at ¶ 51(ii)). As detailed above, that is plainly incorrect. The Trustee also contends that FSCLE cannot identify a specific res. (Trustee's Brief at ¶ 51(iv)). That is also incorrect. The bulk of FSCLE complaint is spent showing in detail the payments from FSCLE to Goodman Networks pursuant to the fraudulent invoices. Then, FSCLE traces the flow of funds out of the 4352 Account to fund the various money laundering schemes engaged in by Frinzi, James Goodman and others acting with them. (e.g. Compl. at ¶¶ 240 – 283). FSCLE can trace the bulk of the funds stolen into: Goodman Investment Holdings, the Frinzi Family Trust and Endeavor Managed Services.

In addition, FSCLE has been able to trace in detail the payments made to the Auerbachs and others as payment to facilitate the money laundering.  (e.g. Compl. at ¶¶ 302 – 319).  Those payments all came from stolen FSCLE funds.   FSCLE has absolutely set forth a colorable claim for a constructive trust including fraud, unjust enrichment and tracing an identifiable res.

### (5)      The Trustee Is Barred from Asserting Several of the Claims Against a Number of the Defendants.

The Trustee's motion must be denied for an additional reason:  a trustee does not have standing to pursue actions on behalf of individual creditors.  *Finova Capital Corp. v. Lawrence*, 2000 WL 1808276, *2 (N.D. Tex. Dec. 8, 2000).  A trustee may, under certain circumstances, be barred from pursuing certain claims under the doctrine of *in pari delicto* if the defense appears on the face of the complaint to be enjoined.  *In re Vantage Benefits Administrators, Inc*., 2021 WL 1815065, *15 (N.D. Tex., May 5, 2021) (*In pari delicto* may bar a trustee's claims but the analysis is intensely factual); *but see In re Today's Destiny, Inc.*, 388 B.R. 737, 747-49 (S.D. Tex. 2008) (finding that *in pari delicto* did not bar a trustee's claims in that case).

This very issue arose and was addressed by the Southern District of Texas in connection with the Enron bankruptcy. In *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 2007 WL 789141, *7-8 (S.D. Tex. March 12, 2007), a group of creditors sued JPMorgan Chase for misrepresentations they claimed JPMorgan Chase worked with Enron management to make. *Id*. at *1.  JPMorgan Chase moved to dismiss the complaint in part on the argument that the fraud claim belonged to the bankruptcy estate and could not be asserted by the creditor plaintiffs.  *Id*. The Southern District of Texas, Judge Harmon, conducted an analysis to determine who the claims belonged to under bankruptcy law and Texas law.  Specifically, Judge Harmon considered whether the claims were derivative or constituted direct injury.  Judge Harmon granted JPMorgan Chase's motion to dismiss on other unrelated grounds but first found that the claims belonged to the

creditors and could not as a matter of law be brought by the bankruptcy estate. *Id*. at *8.

> In so holding, Judge Harmon said:

> The bankruptcy trustee may only assert claims on behalf of the debtor corporation and generally cannot sue third parties on behalf of the estate's creditors. *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991), *citing Caplin v. Marine Midland Grace Trust Co. of N.Y.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) (holding that a trustee in bankruptcy may not pursue an action against a third party that could not have been brought by the debtor); *Educators Group Health Trust,* 25 F.3d at 1284.

> Moreover, if the debtor has joined a third party in defrauding creditors, the trustee does not have standing to sue the third party for damages to creditors. *Wagoner,* 944 F.2d at 113. **"A claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation."** *Id.* at 120. The trustee can only sue if the corporation has suffered damage distinct from the damage to the creditor. *Id.* at 118-19.

*In re Enron*, 2007 WL 789141 at *7 (emphasis added); *see also Ingalls v. Gressett (In re Bradley),* 326 Fed. Appx. 838, 839 (5th Cir.2009) (citing *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678 (1972) (holding that a trustee lacked standing to sue a third party for damages incurred by debenture holders of the corporate debtor)); *In re Infinity Business Group, Inc.* 31 F.4th 294, 302-03(4th Cir. 2022) (barring a trustee pursuant to *in pari delicto* from pursuing claims against a third party who was alleged to have worked with management to make a fraudulent statement); *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152-56 (11th Cir. 2006) (holding that a trustee in bankruptcy is barred under *in pari delicto* from pursuing claims against third party co-conspirators in RICO for a fraud the insiders worked with others to perpetrate); *Steinberg v. Buczynski,* 40 F.3d 890, 893 (7th Cir.1994) ( "When a third party has injured not the [debtor] itself but a creditor of [the debtor], the trustee in bankruptcy cannot bring suit against the third party. He has no interest in the suit."); *Sherman v. Main Event, Inc.*, 2003 WL 251653, *5 (N.D. Tex. Feb. 3, 2003) (trustee stood in the shoes of the

debtor who was engaged in the fraud that underpinned the RICO activity and could not sue the co-conspirators as there would be no reasonable reliance on the part of the debtor); *Picard v. JPMorgan Chase & Co.*, 2011 WL 5170434, *3 (S.D.N.Y. Nov. 1, 2011) (trustee of Bernard Madoff bankruptcy estate lacked standing to pursue on behalf of victims of ponzi scheme common law damage claims for aiding and abetting fraud and conversion); *Jones v. Hyatt Legal Services (In re Dow),* 132 B.R. 853, 861–62 (Bankr. S.D. Ohio 1991) (trustee without standing to bring claim that the defendants assisted the debtor in furtherance of the debtor's scheme of fraudulently conveying property with the intent to hinder, delay, or defraud creditors).

Similarly, in *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beam Systems, Inc.*, 566 B.R. 815, 842-43(W.D. Tex. 2017), the district court affirmed the dismissal of certain claims brought by a trustee against third parties including RICO claims based in part on the doctrine of *in pari delicto*. The Court held that:

> The Court finds that the *in pari delicto* defense appears on the face of the Complaint, *i.e.,* that one wrongdoer, CryptoMetrics via the trustee, is seeking to recover from another, the Stolzar defendants, when CryptoMetrics' own intentional wrongdoing (through its officers) contributed to its injuries. Barra and Vitale were co-CEOs of CryptoMetrics. Their acts are "presumptively imputed to CryptoMetrics, who is responsible for such acts even if they were unauthorized. (Internal cite omitted). **The trustee now stands in the shoes of CryptoMetrics, and the "debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative."** (Internal cite omitted). The Complaint alleges that Stolzar acted *with* Barra and Vitale to fraudulently obtain financing for CryptoMetrics. *See* Am. Compl. 258–87. This was a fraud in which the debtor company, via its officers, participated in.

*Id*. at 842. (Emphasis added).

Advancing the "Waggoner" Rule and the *in pari delicto* doctrine, FSCLE does not suggest that the Trustee has no avenue of recovery against debtor's insiders or those who received funds from the debtor. Pursuant to 11 U.S.C. § 544, the Trustee has the statutory

right to seek avoidance actions separate and apart from any actions which the debtor may have had as of the petition date. However, "[s]ection 544 is limited to avoidance actions and does not give the trustee standing to pursue tort claims that were not the property of the estate at the commencement of the case." 5 *Collier on Bankruptcy* ¶ 544.01 (16th ed. 2011) (footnote omitted) (Section 544 "does not transform the trustee into a 'super creditor.' "). Moreover, the Trustee may well have claims against the Debtor's insiders for breach of fiduciary duties that would not be barred by the doctrine of *in pari delicto*. See *Floyd v. Hefner*, 556 F.Supp.2d 617, 658-59 (S.D. Tex. 2008).

Thus, both the Trustee and FSCLE have separate and independent claims against the Debtor's insiders and against those who engaged in unlawful activity. The Trustee has exclusive jurisdiction to bring avoidance actions and claims against the insiders for breach of their fiduciary duties. FSCLE does not assert those claims. FSCLE has claims against the insiders and those in league with them for the fraud perpetrated against FSCLE including sounding in RICO, fraud, theft and constructive trust. The Trustee may not assert these claims and should not be granted an injunction to stop FSCLE from remedying the wrongs done to it.

**B.      The Estate Does Not Face Any Irreparable Harm.**

The Trustee argues that he need not demonstrate irreparable harm because he claims that the District Court Lawsuit is a violation of the automatic stay. 11 U.S.C. § 362(a). (Trustee's Brief at ¶¶ 78-80). The Trustee's argument fatally relies upon the presumption that FSCLE's District Court Lawsuit violates the automatic stay. If the claims at issue are not property of the estate, there is no violation of the automatic stay. *See In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007) (holding that the automatic stay in

27

Section 362 does not apply to or bar claims that are not property of the bankruptcy estate). Aside from this flawed argument, the Trustee does not even attempt to argue irreparable harm.

The Fifth Circuit has described an injury as "irreparable" if it "cannot be undone by a monetary remedy." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472–73 (5th Cir.1985). "The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury." *Id*. at 473. In other part of the Trustee's brief, he argues that if the District Court Lawsuit is permitted to move forward that the "Trustee" (as opposed to the Debtor's Estate) would be required to expend valuable resources monitoring and litigating matters for two independent subsidiaries of the Debtor that are not themselves in bankruptcy. (Trustee's Brief at ¶24). The Trustee also argues that "other parties" (unconnected to the Debtor) would also have to expend money defending claims against them. (Trustee's Brief at ¶24). Finally, the Trustee argues in various places in his brief that he is seeking recovery of funds for the benefit of all creditors. None of these arguments are sufficient to establish irreparable harm.

First, most of the arguments are not asserting alleged harm to the Debtor. Second, the Trustee has an obligation to manage the independent subsidiaries no matter and the automatic stay simply does not apply to them. Third, the expense incurred or not incurred by third parties simply cannot as a matter of law be irreparable harm. Finally, the Trustee's race to recover assets argument is the exact argument considered and rejected by Judge Zainey in *FoodServiceWarehouse.com*, 601 B.R. at 411. None of the Trustee's arguments constitute irreparable harm.

**C.      The Harm to FSCLE in Granting an Injunction Is Severe.**

The third factor requires this Court to balance the equities between the opposing parties. *DSC Commc'ns Corp. v. DGI Techs., Inc.,* 81 F.3d 597, 600 (5th Cir.1996). Specifically, this Court must balance the harm that would be suffered by FSCLE if the preliminary injunction is granted against the claimed harm that would result to the estate if the injunction is denied.

The Trustee's arguments all center on the alleged harms to the Debtor in the period between the filing of the motion for a preliminary injunction in late November 2023 and the hearing on the adversary complaint in 2024.  (Trustee's Brief at ¶¶ 82-83).  The Trustee makes no arguments on the balancing of the harms on a go forward basis.

As to the balancing of the equities between the time the Trustee filed his motion for a preliminary injunction and the hearing of the adversary complaint, FSCLE has balanced the interest of all parties by agreeing to an expedited hearing on the adversary complaint and by agreeing that all that FSCLE will do in the District Court Lawsuit between now and then is perfect service on the various defendants therein.  FSCLE also wants a resolution of the legal issues raised by the Trustee's motion.  There is no strong weighing of the equities between FSCLE and the Debtor as to the period between the filing of the motion for a preliminary injunction and the hearing of the adversary complaint.

As to the period from the adversary complaint hearing forward, the equities strongly favor FSCLE and a denial of the requested injunction.  As set forth herein, FSCLE has unique claims of particularized harm to it that are not assets of the estate.  Neither the Debtor nor the Trustee has a valid claim to the causes of action asserted by FSCLE.  FSCLE and only FSCLE suffered the harm from the fraud and theft perpetrated against it.  The

Debtor did not suffer from that harm.  The Debtor benefited from it, at least temporarily.

The fraud and theft were perpetrated by Debtor insiders who stole the money from FSCLE

with the intent to ultimately launder it back to themselves or for their benefit.  These are

claims that are unique to FSCLE.  The stolen funds never became assets of the estate.

*Matter of Okedokun*, 968 F.3d at 390.  Thus, if an injunction were to be issued, FSCLE

would be further harmed in not being able to pursue recovery for funds that were uniquely

and particularly stolen from it.  Conversely, the Debtor would not be harmed by a denial

of an injunction because the funds were never the Debtor's in the first place, were not in

the Debtor's possession at any time after the filing of the petition in bankruptcy and the

claims are not assets of the estate.

The Trustee argues that FSCLE can be equitably treated by participating with all

other creditors based on assets recovered by the Trustee.  Some of FSCLE's claims are

general creditor claims (the amounts paid to Debtor prior to November 3, 2021).  As to

these claims, FSCLE agrees.  However, as to the funds paid to the Debtor after November

3, 2021, FSCLE cannot and will not be equitably treated by having the funds stolen from

it go to any other creditor.  FSCLE is not like any other creditor for its claims on and after

November 3, 2021.  The equities strongly favor a denial of an injunction.

> **D.**    **The Public Interest Does Not Favor an Injunction.**

Here, the only public interest that can be asserted is promotion of and support for

the bankruptcy process itself including honoring the automatic stay and the treatment of

creditors in classes in accordance with bankruptcy procedure.  FSCLE certainly agrees that

those are strong public interests that would support the issuance of an injunction for claims

for funds paid to the Debtor prior to November 3, 2021.  FSCLE's claim to those funds can

be found in its proof of claim in this bankruptcy – not in the District Court Lawsuit.  As to

the claims from November 3, 2021 forward, those claims are not claims of the estate and

thus there is no public interest in issuing an injunction.

In paragraph 84 of the Trustee's Brief, the Trustee asserts that the public interest

runs against the race to the courthouse.  As to claims prior to November 3, 2021, FSCLE

agrees.  However, from November 3, 2021 forward the payments from FSCLE to Goodman

Networks are the product of fraud and theft.  From November 3, 2021 forward, the

Trustee's claim to clear the field and avoid the race to the courthouse is exactly the

argument rejected in *FoodServiceWarehouse.com*, 601 B.R. at 411.

### E.      FSCLE Has Not Violated the Automatic Stay.

The Trustee repeatedly decries FSCLE's complaint in the District Court Lawsuit as a

violation of the automatic stay found in 11 U.S.C. § 362(a).  Section 362(a) operates as a stay only

as to actions against a debtor and its property.  *Id*.; *In re TXNB Internal Case*, 483 F.3d at 301.

### (1)      FSCLE Has Not Brought Any Claims Against the Debtor.

In paragraphs 72-75 of his brief, the Trustee argues that FSCLE has sued Goodman

Networks.  That argument is facially inaccurate and legally flawed.  First, Goodman Networks is

not named as a party in the District Court Lawsuit.  The style of the District Court Lawsuit shows

that Goodman Networks is not a named defendant.  In fact, FSCLE expressly states in the District

Court Lawsuit that it is not asserting any claim against Goodman Networks.  (Compl. at ¶ 415 "No

claims are brought in this case against Goodman Networks.")  Moreover, FSCLE does not seek

any recovery against the Debtor in the District Court Lawsuit.

Despite expressly stating that FSCLE is not suing Goodman Networks, the Trustee argues

that FSCLE is allegedly suing the Debtor because the name "Goodman Networks" allegedly

appears three hundred ninety (390) times in the District Court Lawsuit.  (Trustee's Brief at ¶ 72).

There is no way to tell the story of the theft and fraud perpetrated by Frinzi, James Goodman and others without explaining that they used Goodman Networks to perpetrate that fraud and theft against FSCLE. The fact that the corporate name appears frequently in the District Court Lawsuit is neither surprising nor evidence that Goodman Networks is actually a defendant.

The Trustee next argues that FSCLE is asserting a breach of contract claim against the Debtor. (Trustee's Brief at ¶ 73). That is also facially inaccurate. FSCLE does not assert a breach of contract[9] claim against any party in the District Court Lawsuit. As set forth above and supported by caselaw, when one either enters into a contract with no intent to perform or after entering the contract decides not to perform any further and takes acts that induces the other party to the contract to continue to perform, those acts constitute theft and fraud. *See Taylor*, 450 S.W.3d at 357 (theft); *Spoljaric*, 708 S.W.2d at 434 (fraud). Trustee's arguments completely fail to address these lines of cases or the fact that something that is a breach of contract can also be a cause of action for theft and fraud without having to assert the breach of contract claim in the case. *See Saint Paul Commodities*, 2012 WL 3135574 at *4. Further, having bases of recovery against the Debtor in the Proof of claim for certain amounts does not preclude or stay recoveries against "co-tortfeasors, or other non-debtors." *Uranga v. Holiday Mkt., Inc.*, 2014 WL 349716, at *1 (N.D. Tex. Jan. 31, 2014); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) (" . . . the protections of § 362 neither apply to co-defendants nor preclude severance.") FSCLE has not asserted a breach of contract claim against the Debtor in the District Court Lawsuit.

Lastly, the Trustee mistakenly relies upon and cites to *In re Colonial Realty Co.*, 980 F.2d 125, 132 (2nd Cir. 1992), as alleged support for the proposition that FSCLE claims against third

---

[9] FSCLE does raise breach of contract as one of its claims in its Proof of Claim. (POC No. 32-1, ¶ 1). The amounts paid to Goodman Networks prior to November 3, 2021 but not paid back to FSCLE less the agreed upon amounts do constitute a breach of contract. That claim is not asserted in the District Court Lawsuit.

parties are claims against the Debtor.  In *Colonial Realty*, two individuals and the real estate firm they operated were put into an involuntary bankruptcy after their real estate investments failed.  *Id*. at 127.  The real estate firm they ran had loans between 1985 and 1990 with a variety of banks which then also failed in a cascading fashion.  *Id*.  The FDIC stepped in as receiver of the failed banks and sought to recover the amounts owed on the loans.  *Id*.  In the months right before the involuntary bankruptcy, one of the individual debtors fraudulently transferred funds to his wife and others to keep them from being recovered by either the bankruptcy trustee or the FDIC.  *Id*. at 128.  The FDIC then filed suit to set aside the fraudulent transfers and the trustee argued that the action to set aside the fraudulent transfers violated the automatic stay.  *Id*.

*Colonial Realty* is factually distinguishable because there is no allegation in that case that the funds obtained from bank loans or otherwise then transferred out just prior to the bankruptcy were themselves originally obtained by fraud or theft.  This is a key factual distinction.  In *Colonial Realty*, the funds which were transferred out were funds that otherwise were assets of the individual and corporate debtors prior to being fraudulently transferred.  Here, the funds in question were obtained originally through fraud and theft.  Moreover, unlike the FDIC in *Colonial Realty*, FSCLE has not brought a fraudulent transfer claim against any of the third parties.  There is a distinction between claims for the direct tort liability of the third parties, as asserted by FSCLE, and a claim for setting aside a fraudulent transfer.

### (2)      FSCLE Has Not Asserted a Claim or Cause of Action that Belongs to the Estate.

As set forth in detail above, FSCLE has not violated the automatic stay with the claims asserted in the District Court Lawsuit because none of those claims belong to the estate.  If a claim does not belong to the estate, there is no violation of the automatic stay.  *In re TXNB Internal Case*, 483 F.3d at 301.

## <u>CONCLUSION</u>

FSCLE suffered a unique and particularized harm in this case.  Frinzi, James Goodman and others defrauded and stole tens of millions from FSCLE using invoices that they never intended to perform.  Under controlling Texas and Fifth Circuit law, these claims belong to FSCLE.  The Trustee cannot even bring a number of these claims.  FSCLE should not be damaged further by denying it the right to pursue those who damaged it and those who acted in concert to steal tens of millions.  The Trustee's motion must be denied.  FSCLE should be free to pursue the claims that belong to it and the Trustee should pursue the claims that belong to the estate.

Dated: January 10, 2024

Respectfully submitted,

BUTLER SNOW LLP

s/  Danny Van Horn
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
Danny Van Horn (admitted *pro hac vice*)
6075 Poplar Avenue, Suite 500
Memphis, TN  38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com
cam.hillyer@butlersnow.com
danny.vanhorn@butlersnow.com

and

Candice Carson (TX Bar No. 24074006)
Martin A. Sosland (TX Bar No. 18855645)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com
*Counsel for FedEx Supply Chain*
*Logistics & Electronics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served concurrently with the filing of the same via the Court's CM/ECF electronic filing system upon all persons who have filed ECF appearances in this case and via email to Trustee's Counsel:

> Michael J. Quilling, Esq.
> (Texas Bar No. 16432300)
> Joshua L. Shepherd, Esq.
> (Texas Bar No. 24058104)
> QUILLING, SELANDER, LOWNDS,
> WINSLETT & MOSER, P.C.
> 2001 Bryan Street, Ste. 1800
> Dallas, TX 75201
> (214) 871-2100
> mquilling@qslwm.com
> jshepherd@qslwm.com

s/ Danny Van Horn

85316625.v1