Daniel W. Van Horn, *Admitted Pro Hac*
Adam M. Langley, *Admitted Pro Hac*
R. Campbell Hillyer, *Admitted Pro Hac*
Butler Snow LLP
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200

Martin A. Sosland, TX Bar No. 18855645
Candice Carson, TX Bar No. 24074006
Butler Snow LLP
2911 Turtle Creek Blvd., Ste. 1400
Dallas, TX 75219
(469) 680-5502

Attorneys for FedEx Supply Chain Logistics & Electronics, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GOODMAN NETWORKS, INC., | ) | Case No. 23-31641-mvl-7 |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |

| | | |
|---|---|---|
| SCOTT M. SEIDEL, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 23-03091 |
| v. | ) | |
| | ) | |
| FEDEX SUPPLY CHAIN LOGISTICS | ) | |
| & ELECTRONICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC.'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## THE TRUSTEE'S ORIGINAL COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................... 1

MOTION TO DISMISS STANDARD ......................................................................................... 2

RULE 12(B)(1): LACK OF SUBJECT-MATTER JURISDICTION .......................................... 3

    A.  There is no jurisdiction over the Stay Counts ............................................................ 4

    B.  The Declaratory Counts are not justiciable. .............................................................. 6

RULE 12(B)(6) FAILURE TO STATE A CLAIM ...................................................................... 9

    A.  The District Court Lawsuit did not violate the automatic stay because it is against
        non-debtors for direct damages to FSCLE .............................................................. 9

        (i) Section 362(a)(1) does not apply to claims against non-debtors. .................... 10

        (ii) The District Court Lawsuit seeks direct damages to FSCLE – it does not assert
            derivative claims that are property of the estate. ...................................... 11

        (iii) The automatic stay was not violated, and the Trustee cannot seek relief under
            section 362(k); therefore, there is no entitlement to damages. ................. 18

    B.  The Declaratory Counts fail to state a claim upon which relief can be granted ......... 19

        (iv) As a matter of law, a thief does not obtain title under Texas Law ................ 20

        (v) Constructive Trusts are extraordinary but available remedies in Bankruptcy. 22

        (vi) Without a specific res plead, the Trustee cannot obtain declaratory relief. ... 26

        (vii) The Court should exercise its discretion to dismiss the Declaratory Counts. 27

CONCLUSION ............................................................................................................................ 32

CERTIFICATE OF SERVICE ................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019) .......................... 13, 14

*Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475 (5th Cir. 1986)................ 17

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) ................................................. 10

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) ........................................................... 7

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815 (W.D. Tex. 2017) ................................................................. 28

*Butner v. United States*, 440 U.S. 48 S.Ct. 914, 59 L.Ed.2d 136 (1979)................................. 20

*Butner*, supra; *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019)........ 21

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ..................................................... 4, 5

*E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808 (Bankr. N.D. Tex 1989)................ 12, 16

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985)............................. 10

*Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996)...................................................... 16

*Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015) ................................ 6, 8

*Havelock v. Taxel (In re Pace)*, 67 F.3d 187 (9th Cir. 1995) ....................................... 18

*Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ............................. 15

*In re Amberjack Interests, Inc.*, 326 B.R. 379, 385 n. 1 (Bankr.S.D.Tex.2005)........................ 19

*In re Bass*, 171 F.3d 1016 (5th Cir. 1999) ........................................................... 4

*In re C.W. Min. Co.*, 477 B.R. 176 (10th Cir. BAP 2012)............................................. 18

*In re City Wide Cmty. Dev. Corp.*, 2023 WL 6542909 (Bankr. N.D. Tex. Oct. 6, 2023) ............. 3

*In re Educators Group Health Trust*, 25 F.3d at 1284................................................ 12

*In re First Republic Bank Corp.*, 113 B.R. 277 (Bankr. N.D. Tex. 1989)................................ 19

*In re FoodServiceWarehouse.com, LLC*, 601 B.R. 396 (E.D. La. 2019) ............................. 29, 30

*In re Kalispell Feed & Grain Supply*, 55 B.R. 627 (Bank. D. Mont. 1985)............................. 16

*In re Leitner*, 236 B.R. 420 (Bankr. D. Kan. 1999)................................................ 23, 25

*In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983) ......................................... 11

*In re New York Inn Inc.*, 2023 WL 2938371, (Bankr. N.D. Tex. Apr. 13, 2023 .......................... 6

*In re Newpower*, 233 F.3d 922 (6th Cir. 2000)................................................. 20, 21, 25

*In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994) ............................................. 24

*In re Paul J. Paradise & Associates, Inc.*, 249 B.R. 360 (D. Del. 2000) ............................. 25

*In re Providence Hosp. of N. Houston LLC*, 653 B.R. 612 (Bankr. S.D. Tex. 2023).................... 7

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) ................................. 12, 17

*In re Tusa-Expo Holdings, Inc.*, 2014 WL 172276 (Bankr. N.D. Tex. Jan. 15, 2014) ................ 18

*In re With Purpose, Inc.*, 654 B.R. 715 (Bankr. N.D. Tex. 2023) ........................... 4, 5, 11, 12, 17

*KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70 (Tex. 2015) ............................................. 15

*Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc.* (*In re Chateaugay Corp.*), 920 F.2d 183 (2nd Cir.1990) ................................................................................. 19

*Matter of Approximately $80,600.00*, 537 S.W.3d 207 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ................................................................................................... 20

*Matter of Educators Grp. Health Tr.*, 25 F.3d 1281 (5th Cir. 1994) ......................... 11

*Matter of Haber Oil Co., Inc.*, 12 F.3d 426 (5th Cir. 1994) ....................... 7, 19, 22, 26

*Matter of Monnig's Dep't Stores, Inc.*, 929 F.2d 197 (5th Cir. 1991) ........................... 23

*Matter of Okedokun*, 968 F.3d 378 (5th Cir. 2020) .................................................. 20

*Matter of Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir. 1985) ................... 23, 24, 25

*Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) ......................... 10, 11

*Matter of UTSA Apartments 8, L.L.C.*, 886 F.3d 473 (5th Cir. 2018) ............... 7, 19, 22

*Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) ...................................................... 4, 5

*Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974) .................................................... 23

*Neochem Corp. v. Behring Int'l, Inc.* (*In re Behring Int'l, Inc.*), 61 B.R. 896 (Bankr.N.D.Tex.1986) ................................................................................................. 22

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583 (5th Cir. 1987) ............................................................................................................................... 6

*PAJ, Inc. v. Yurman Design, Inc.*, No. CIV.A.3:98-CV-2847-P, 1999 WL 68651 (N.D. Tex. Feb. 9, 1999) ......................................................................................................... 28

*Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990) ............................ 10

*Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603 (5th Cir. 2022) ............................................................................................................................ 27

*Serco Servs. Co., L.P. v. Kelley Co.*, 1994 WL 715913 (N.D. Tex. May 24, 1994), *aff'd*, 51 F.3d 1037 (Fed. Cir. 1995) ...................................................................................... 28

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383 (5th Cir. 2003) ..................... 6, 27

*Sinclair Houston Fed. Credit Union v. Hendricks*, 268 S.W.2d 290 (Tex. Civ. App. 1954 ........ 20

*Sonse v. Reinert & Duree, P.C.* (*In re Just Brakes Corp. Sys., Inc.*), 108 F.3d 881 (8th Cir. 1997) ............................................................................................................................ 18

*Spookyworld, Inc. v. Town of Berlin* (*In re Spookyworld, Inc.*), 346 F.3d 1 (1st Cir. 2003) ........ 18

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774 (5th Cir. 1993) ...................... 27

*United States v. Toney*, 598 F.2d 1349 (5th Cir. 1979) .................................................. 17

*Uranga v. Holiday Mkt., Inc.*, 2014 WL 349716 (N.D. Tex. Jan. 31, 2014) ............................. 10

*Val-Com Acquisitions Tr. v. Chase Home Fin., L.L.C.*, 434 F. App'x 395 (5th Cir. 2011) ........... 6

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983) ................................................. 10

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ...................................................... 6, 27

**Statutes**

18 U.S.C.A. § 1964 ........................................................................................................ 16

28 U.S.C. § 157 ............................................................................................................... 5

28 U.S.C. § 2201 ............................................................................................................. 6

Restatement (Second) of Torts § 229 cmt. D (1965) .................................................. 20

**Rules**

Fed. R. Bankr. P. 7001 ......................................................................................... 7, 8, 19

Fed. R. Bankr. P. 7012 ..................................................................................................... 2

Fed. R. Bankr. P. 7022 ................................................................................................. 8, 9

Fed. R. Civ. P. 12 .............................................................................................................. 2

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

Comes now FedEx Supply Chain Logistics & Electronics, Inc. ("FSCLE" or "FedEx") and

for its brief in support of its Motion to Dismiss the Trustee's Original Complaint states as follows:

### PRELIMINARY STATEMENT

1.      The Trustee Complaint should be dismissed. It asserts two classes of claims: (1)

two requests seeking to collaterally attack and stay FSCLE's District Court Lawsuit (Counts 6-7,

the "Stay Counts") and (2) five requests for preemptive declarations that FSCLE cannot

affirmatively seek remedies for constructive, express, and resulting trusts in the future (Counts 1-

5, the "Declaratory Counts"). The Trustee Complaint does not plead a cause of action against

FSCLE but instead improperly seeks procedural remedies of declaratory and injunctive relief.

2.      The Stay Counts are a collateral attack on FSCLE and the District Court Lawsuit.

They should be dismissed for failure to state a claim as to Count 6 (Damages for Violation of the

Automatic Stay) and lack of subject-matter jurisdiction and failure to state a claim as to Count 7

(Permanent Injunction). The Trustee alleges that some but not all the tort claims asserted by

FSCLE in its District Court Lawsuit are property of the estate and protected by the automatic stay.

Specifically, he asserts FSCLE's RICO, theft, unjust enrichment, constructive trust, and civil

conspiracy claims (Cause of Action Nos. 1, 2, 3, 4, 5, and 8) are derivative claims of the estate but

admits FSCLE's fraud and tortious interference claims (Cause of Action Nos. 6 and 7) are direct,

personal claims of FSCLE against non-debtors. This splitting of hairs on FSCLE's claims

mischaracterizes the nature of FSCLE's claims because the entirety of the claims seeks direct

damages resulting from same tortious conduct of non-debtors. The claims rise and fall on the same

injuries. The admission that some claims are direct and personal should end this Court's inquiry.

FSCLE has sued joint tortfeasors of the Debtor. The named Defendants are non-debtors and none

1

of the claims asserted are derivative claims (e.g., fraudulent transfers, breaches of fiduciary duty, denuding, alter ego, etc.). The District Court Lawsuit did not violate the automatic stay and should not be enjoined.

3.      The Declaratory Counts attempt to preempt FSCLE from taking future actions. They ask this Court to declare as a matter of law that under no circumstances can FSCLE affirmatively seek future property determinations or equitable relief in this bankruptcy case should factual circumstances ripen that justify such remedies.  Property rights are determined by state law. Under Texas law, a thief does not acquire title, and actual fraud can give rise to a constructive trust with an effective date that relates back to the when the wrongful conduct gave rise to the remedy. FSCLE continues to reserve its right to assert equitable remedies and property rights in this case should the factual circumstances justify it. The adjudication of those remedies will only ripen when brought by FSCLE in an adversary proceeding on complete, factual pleadings. The Court should reject the Trustee's preemptive use of declaratory relief to foreclose controversies that may ripen in the future and dismiss the Declaratory Counts.

## **MOTION TO DISMISS STANDARD**

4.      Bankruptcy Rule 7012 incorporates Civil Rule 12(b)(1) and (6) into this adversary proceeding. Fed. R. Bankr. P. 7012; **Fed. R. Civ. P. 12**(b)(1) and (6). This Court must dismiss a complaint where there is a "lack of subject-matter jurisdiction" or a "failure to state a claim upon which relief can be granted." Id. This Court recently stated the applicable standards for motions to dismiss under Rule 12(b)(1) and (6):

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, as it is here, a court should consider the jurisdictional attack prior to turning to the merits. In considering a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which

2

may be in dispute. Ultimately, the motion should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle the plaintiff to relief.

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff. However, the Court need not "strain to find inferences favorable to the plaintiffs. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, state a plausible cause of action. This plausibility requirement sits somewhere between possible and probable, and is satisfied where the plaintiff's pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*In re City Wide Cmty. Dev. Corp.*, 2023 WL 6542909, *3-4 (Bankr. N.D. Tex. Oct. 6, 2023).

## RULE 12(B)(1): LACK OF SUBJECT-MATTER JURISDICTION

5.      This Court has subject-matter jurisdiction over this bankruptcy case and its "arising under," "arising in" and "related to" proceedings and to hear and determine questions regarding property of the estate, including making declarations regarding such property. 28 U.S.C. § 1334(b) and (e).  However, the Trustee Complaint does not present a case and controversy that falls within this Court's subject-matter jurisdiction and authority for two reasons. First, the Stay Counts seek the recognition of, or imposition of, an injunction against portions of the FSCLE Complaint, and this Court lacks jurisdiction and authority over the FSCLE Complaint because FSCLE's claims are its property and asserted against non-debtors in a non-bankruptcy forum. FSCLE's claims arise under state and federal law other than title 11. They are not related to this bankruptcy case because FSCLE, a non-debtor, has asserted its personal claims against other non-debtors. Second, the Declaratory Counts do not present a case or controversy because neither FSCLE nor the Trustee has brought an action to determine rights in a specific res. The Declaratory Counts instead seek to preempt FSCLE from asserting future rights and actions, but this Court lacks jurisdiction over such preemptive use of the Declaratory Judgment Act because the Constitution mandates an actual case

and controversy – not a hypothetical, conjectural, or conditional declaration based upon the
possibility of a factual situation that may never develop.

### A.    There is no jurisdiction over the Stay Counts.

6.    This Circuit applies the "conceivable effect" test to determine whether a proceeding is
"related to" the bankruptcy case, but "a bankruptcy court's 'related to' jurisdiction cannot be
limitless." *Matter of Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995).

> More specifically, an action is related to bankruptcy if the outcome
> could alter the debtor's rights, liabilities, options, or freedom of
> action (either positively or negatively) and in any way impacts upon
> the handling and administration of the bankruptcy estate. This test
> is obviously conjunctive: For jurisdiction to attach, the anticipated
> outcome of the action must both (1) alter the rights, obligations, and
> choices of action of the debtor, and (2) have an effect on the
> administration of the estate.

*In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).  Bankruptcy jurisdiction extends "more
broadly" in a reorganization case under chapter 11 than in a liquidation case under chapter 7.
*Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995).  This Circuit and the "large majority of cases
reject the notion that bankruptcy courts have 'related to' jurisdiction over third party actions"
grounded in tort. *Zale Corp.*, 62 F.3d at 753-57.

7.    "Related to" has a jurisdictional meaning distinguishable from two actions simply
sharing related facts and parties. "Shared facts between the third-party action and a debtor-creditor
conflict do not in and of themselves suffice to make the third-party action 'related to' the
bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an
otherwise unrelated suit." *Zale Corp.*, 62 F.3d at 753–54; *In re With Purpose, Inc.*, 654 B.R. 715,
726 (Bankr. N.D. Tex. 2023) (Larson, M.).  Related to jurisdiction to enjoin third party claims only
exists upon a showing of "unusual circumstances." *Zale Corp.*, 62 F.3d at 761.

4

> These circumstances include 1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. When either of these circumstances occur, an injunction may be warranted. If not, a bankruptcy court may not enjoin the third-party action.

*Id.* at 761 (citations omitted). The Trustee has not, and cannot, make this showing of unusual circumstances. First, there is no identify of interests because FSCLE does not seek liability against the Debtor in the District Court Lawsuit and the Trustee's rights, obligations and choices of actions remain unaffected.   And, pivotal here, there is no reorganizational administrative purpose that can be interfered with by the District Court Lawsuit because this is a chapter 7 liquidation case. As stated by the Supreme Court, related to jurisdiction does not "extend more broadly" in a liquidation case under chapter 7.   *Celotex*, 514 U.S. at 310.   The rule barring jurisdiction over third party claims grounded in tort found in *Zale Corp.* applies in full force here. The Stay Counts must be dismissed for lack of subject-matter jurisdiction.

8.      In addition to the lack of subject-matter jurisdiction, neither the Constitution nor statute confers authority on bankruptcy courts to finally determine and issue relief on the Stay Counts, which are non-core claims. Core proceedings are those proceedings that derive from a statutory scheme enacted pursuant to the Bankruptcy Clause of the Constitution (i.e., title 11 or the Bankruptcy Code), meaning such proceedings are "arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). FSCLE's claims arise under state and non-bankruptcy federal law and are independent of this bankruptcy case. Such claims are non-core proceedings. *With Purpose*, 654 B.R. at 730 ("The issues are clearly non-core"). FSCLE does not consent to this Court determining the Stay Counts.  Only the District Court has jurisdiction and authority to enjoin the FSCLE Complaint that is before it.

9.     The District Court already has jurisdiction and Article III constitutional authority over the FSCLE Complaint. The Trustee has not sought to intervene in the District Court Lawsuit and, instead, has sought this non-core proceeding as a collateral attack. The Stay Counts should be dismissed for lack of authority.

**B.     The Declaratory Counts are not justiciable.**

10.     Bankruptcy courts may enter declaratory relief under the Declaratory Judgment Act, codified at 28 U.S.C. § 2201, where there is an actual controversy, but such relief is discretionary and "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("The Act "confers discretion on the courts [to grant declaratory relief] rather than an absolute right on a litigant [to such relief].""). "The Declaratory Judgment Act is not jurisdictional. It is procedural only, and merely grants authority to the courts to use a new remedy in cases over which they otherwise have jurisdiction." *In re New York Inn Inc.*, 2023 WL 2938371, *7 fn. 80 (Bankr. N.D. Tex. Apr. 13, 2023) (citing *Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015)). Prior to exercising its discretion to decide or dismiss the action, the bankruptcy court must determine "whether the declaratory action is justiciable." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003).

11.     "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Harris County*, 791 F.3d at 587; *Val-Com Acquisitions Tr. v. Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395–96 (5th Cir. 2011) ("An actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests. The controversy must be such that it can presently be

6

litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility

of a factual situation that may never develop. The plaintiffs have the burden of establishing the

existence of an actual controversy under the Act.") "To have standing under the [Declaratory

Judgment Act], the plaintiff may show that 'actual present harm or a significant possibility of

future harm' exist 'even though the injury-in-fact has not yet been completed.'" *In re Providence*

*Hosp. of N. Houston LLC*, 653 B.R. 612, 623 (Bankr. S.D. Tex. 2023) (citing *Bauer v. Texas*, 341

F.3d 352, 357-58 (5th Cir. 2003)).

12.     In the *Providence Hosp. of N. Houston* case, the plaintiff trustee had sought a

declaration that "[Defendant] holds no valid claim against the Debtor or the Estate." *In re*

*Providence Hosp. of N. Houston LLC*, 653 B.R. at 624-25. But, the Texas bankruptcy court held

this declaratory relief was not justiciable because it did not present an actual controversy. *Id*. The

defect was that the defendant had not yet "filed a claim or otherwise asserted that any amount is

due from the Debtor." *Id*. The court would not declare a negative in the abstract. *Id*.  The trustee

could not preemptively bar the claimant from seeking relief in the future.  *Id*.

13.     While FSCLE has filed a claim as an unsecured creditor, it is has not taken the

further step of commencing an adversary proceeding to determine property rights or assert

equitable interests or remedies related to property.  FSCLE recognizes that it must commence an

adversary proceeding if it wants this Court to determine an interest in property, including declaring

a constructive or resulting trust. Fed. R. Bankr. P. 7001(2) and (9); *Matter of Haber Oil Co., Inc.*,

12 F.3d 426 (5th Cir. 1994) (holding a constructive trust in bankruptcy must be asserted through

an adversary proceeding and not a proof of claim); *Matter of UTSA Apartments 8, L.L.C.*, 886 F.3d

473 (5th Cir. 2018) (same). Absent a cause of action commenced by FSCLE, there is no current

case or controversy, and the Declaratory Counts should be dismissed because the Trustee cannot

seek a "procedural" remedy of declaratory judgment where there is no underlying cause of action. *See Harris County*, *supra*.

14.     FSCLE reserved in its Proof of Claim the right to seek remedies. POC No. 32, ¶ 54 ("FSCLE reserves the right to seek remedies at law and equity to have the monies unlawfully appropriated from it any traceable proceeds to be determined as subject to an express, equitable, constructive, resulting, or other trust."). And, it reserved the right to seek property determinations. *Id*. ("FSCLE specifically reserves the right to asset that the monies unlawfully appropriated from it by Goodman Networks are its related parties and co-conspirators any traceable proceeds thereof are not property of the estate, property of Goodman Networks, or property of the related parties and co-conspirators."). Contrary to the Trustee's allegations, nothing in the Proof of Claim seeks a determination or declaration of an interest in property because reservations of rights are not affirmative requests for relief. The Trustee was put on notice of potential defects in title of the Debtor, but no affirmative relief was sought when FSCLE submitted its Proof of Claim.

15.     The Trustee seeks to preempt FSCLE's reserved rights and have this Court declare a negative in the abstract. He asks this court to prematurely declare that FSCLE cannot seek a future determination, declaration, or equitable remedy under any circumstances. To be clear, the Trustee is not seeking a determination of an interest in specific property pursuant to Fed. R. Bankr. P. 7001(3) and has not interplead specific property pursuant to Fed. R. Bankr. P. 7022. Facts and property rights are not at issue in the Trustee Complaint on the Declaratory Counts. The Trustee only seeks a declaration that FSCLE cannot assert property rights or equitable interests and remedies in this case no matter the facts that develop or the property that is located or recovered. This preemptive declaration is contrary to established declaratory judgment standards. The Declaratory Counts are hypothetical, conjectural, premature and based upon the possibility that

FSCLE will seek a future determination over property recovered by the Trustee. Because FSCLE has not yet done so, the Declaratory Counts are not ripe.

16.     This Court should decide any future controversaries based on the factual record developed in an adversary proceeding related to specific property. If the Trustee should locate or recover disputed property and need a determination on specific property in his possession, he has tools related to identifiable property. He may interplead that property pursuant to Fed. R. Bankr. P. 7022 and force FSCLE and any other party in interest, including himself, to assert its rights relative to that specific property. Or, he may seek a property determination on specific property in his possession. It is not appropriate to conjecture as to what assets will be recovered, from whom they will be recovered, the factual circumstances at that time, and whether the assets are traceable to the frauds and thefts against FSCLE. The Declaratory Counts are not ripe and should be dismissed as not justiciable.

## RULE 12(B)(6) FAILURE TO STATE A CLAIM

**A.     The District Court Lawsuit did not violate the automatic stay because it is against non-debtors for direct damages to FSCLE.**

17.     The bankruptcy automatic stay does not stay a plaintiff non-debtor's action against non-debtors for direct damages to the plaintiff non-debtor. FSCLE is a plaintiff non-debtor. Its District Court Lawsuit is brought against non-debtors. And, the damages asserted in the District Court Lawsuit are direct damages to FSCLE – not derivative damages of the Debtor's estate (a.k.a. collective damages).  FSCLE seeks remedies for injuries it uniquely sustained due to the non-debtors tortious conduct. The automatic stay in this case does not apply to the District Court Lawsuit.

**(i)        Section 362(a)(1) does not apply to claims against non-debtors.**

18.        It is well-settled law in this Circuit that actions against non-debtors are not stayed

under section 362(a)(1). "In short, the automatic stay generally forestalls any action against debtors

in bankruptcy but not against co-debtors, co-tortfeasors, or other non-debtors." *Uranga v. Holiday*

*Mkt., Inc.*, 2014 WL 349716, at *1 (N.D. Tex. Jan. 31, 2014).

19.        A survey of applicable Circuit law confirms this. *Wedgeworth v. Fibreboard Corp.*,

706 F.2d 541, 547 (5th Cir. 1983) ("Section 362 . . . provides a narrow protection directed at the

debtor and its estate."); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.

1985) ("By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter

7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors."); *Matter of S.I. Acquisition, Inc.*,

817 F.2d 1142, 1147 (5th Cir. 1987) (". . . a section 362(a)(1) stay is available only for the debtor's

benefit and does not prohibit actions against nonbankrupt third parties or codefendants."); *Picco*

*v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) ("The automatic stay of the

bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any

way related to the bankruptcy proceeding."); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir.

2001) ("Section 362 is rarely, however, a valid basis on which to stay actions against non-

debtors.").  In *Wedgeworth*, the controlling case, the Circuit Court analyzed the plain language of

the section 362(a) and its related provisions, the legislative history, and the applicable public

policies and refused to apply or extend the automatic stay to joint tortfeasors. *Wedgeworth*, 706

F.2d at 544. The same plain language, legislative history, and policies apply here.

20.        The District Court Lawsuit is against twenty-six non-debtors. The Debtor is not a

named defendant. And, the District Court Lawsuit makes this clear by expressly disclaiming that

the plead claims are brought against the Debtor. FSCLE Complaint, ¶ 415 ("No claims are brought

in this case against Goodman Networks."). The District Court Lawsuit does not violate the automatic stay because it is not an action against the Debtor.

> **(ii)** **The District Court Lawsuit seeks direct damages to FSCLE – it does not assert derivative claims that are property of the estate.**

21.     FSCLE requests direct damages from non-debtors for their tortious and racketeering activities that injured FSCLE. It does not seek to recover damages on claims resulting from injuries the non-debtors caused to the bankruptcy estate or the Debtor. Put another way, FSCLE's injuries arose from misappropriations of funds from its bank accounts and misrepresentations directed to it. These injuries are not collectively shared with others.

22.     This Circuit recognizes that a narrow class of claims against non-debtors are stayed under section 362(a)(3). That narrow class is derivative claims. Derivative claims are those claims "belonging to the corporation itself." *With Purpose*, 654 B.R. at 722 ("a more important initial question has to be answered: *does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?*") (emphasis original). Derivative claims are property of the estate because they belong to the debtor corporation even though the named plaintiffs are creditors or shareholders. Derivative claims benefit the debtor corporation and its collective creditors and equity members. Examples of derivative claims include fraudulent transfers, breaches of fiduciary duty, denuding, and alter ego. *See, e.g.*, *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987).

23.     This Circuit looks to "the nature of the injury for which relief is sought" to determine whether a plaintiff's claim is direct and personal or derivative of the corporation. *Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the

[estate] or individual [creditor].") (*citing E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex 1989)); *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (". . . we look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury.").

24.     Where the nature of the injury is "direct harm to the corporation, and indirect harm to creditors and shareholders," the action is derivative. *E.F. Hutton*, 103 B.R. at 813.

> If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. . . . Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate."

*In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584 (5th Cir. 2008) (quoting *In re Educators Group Health Trust*, 25 F.3d at 1284).

25.     This Court correctly recognized that a "[creditor's] claims and the estate's claims are not mutually exclusive," and "[t]here is nothing contradictory in saying that [a defendant] might have inflicted direct injuries on both the estate and the [creditor]." *With Purpose*, 654 B.R. at 725. Claims for direct injuries to the creditor are not stayed even if the debtor also suffered direct injuries from the same tortious conduct. Here, as in *With Purpose*, "it is clear that the . . . causes of action are direct, not derivative" because the Debtor benefited from the injuries to FSCLE. *Id.* at 723 ("The misrepresentations that allegedly caused the Plaintiffs' losses injured only the Plaintiffs; they did not injure the corporation. In fact, the Debtor itself benefited from these alleged misrepresentations as the Debtor received millions . . ."). The Debtor, here, benefited from the misappropriations when it received in excess of $66 million from FSCLE into the 4352 Account.

26.     It is undisputed that FSCLE alleged direct injuries resulting from fraud. FSCLE

Complaint, Claim No. 6 (the Actual Fraud Claim). Specifically, FSCLE alleges it was fraudulently

induced to transfer funds in excess of $66 million to the Debtor, which funds were initially held in

the 4352 Account before being further misappropriated for the personal benefit of Frinzi and James

Goodman and their co-conspirators. The Trustee admits that the fraud claims in the District Court

Lawsuit are personal to FSCLE and are not property of the estate. Trustee Complaint, ¶¶ 26, 88.

In addition, the Trustee admits FSCLE plead direct claims for tortious interference.

27.     Despite admitting that FSCLE plead direct claims for fraud and tortious

interference, the Trustee wrongly asserts FSCLE's other claims are not similarly direct. This is

wrong as a matter of law. Each claim is premised on the same injuries.

28.     This is most obvious as it pertains to the civil conspiracy claims against all

Defendants. Conspiracy claims are not standalone claims. They flow from another, primary tort.

*Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("We have

repeatedly called civil conspiracy a 'derivative tort,' meaning it depends on some underlying tort

or other illegal act."). The nature of the primary tort will determine whether the conspiracy is a

direct claim or derivative claim.[1] "Civil conspiracy depends entirely on the injury caused by the

underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself." *Id*.

at 141. Where certain defendants caused direct injuries to FSCLE resulting from a fraud or tortious

---

[1] A "derivative tort" does not mean a derivative claim of the corporation. It means civil conspiracy
is a secondary tort that must be derived from a primary tort. *Id*. at 141 ("Our use of the word
'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and
survives or fails alongside it.").

interference, it follows that other defendants, who conspired in the tortious conduct, also caused direct injuries to FSCLE. The fraud and conspiracy claims are of the same direct nature.

29.    Similarly, the same set of facts and injuries can establish multiple independent, direct claims. Theft often involves fraud. Where a thief utilizes false representations to unlawfully appropriate funds, the thief has caused direct injuries to the victim and the victim has claims for both fraud and civil theft. Theft, like fraud, is a civil tort under Texas law. *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d at 146 (identifying "civil theft" and "conversion" as "underlying torts" that can give rise to civil conspiracy claims). FSCLE asserts two theft claims alongside its fraud claims in the District Court Lawsuit. The theft and fraud claims arise from the same set of facts and assert the same direct injuries. FSCLE alleges "lies" were used to "keep FSCLE funding the 3452 Account," and, therefore, the funds in FSCLE's bank accounts were unlawfully appropriated *into* the 3452 Account based on those lies. FSCLE Complaint, ¶ 699. FSCLE makes it clear that the stolen/embezzled funds were "located in the 4352 Account" after the theft. *Id*. at ¶ 714. FSCLE then asserts claims against all other defendants for "their roles in either receiving the stolen money. . . or in taking acts to aid and abet the theft." *Id*. at ¶ 715. Funds were unlawfully appropriated from FSCLE's bank accounts into the 4352 Account and then laundered out of the 4352 Account through a number of schemes involving the Defendants. FSCLE plainly alleges "Each of the Defendants knew the original source of the funds and knew that these were FSCLE funds in the 4352 Accounts." *Id*. at ¶ 716. Each of the Defendants accepted the funds knowing that they were stolen/embezzled." *Id*. at ¶ 717.

30.    The Trustee's confusion appears to stem from the allegations regarding the 4352 Account. The Trustee appears to believe FSCLE is asserting theft claims solely based on funds flowing ***from*** the 4352 Account. And, he claims that any theft ***from*** the 4352 Account, a Debtor

account, is a claim of the estate. But, as shown above, FSCLE alleges theft of its funds *__into__* the 4352 Account and that subsequent transfers from the 4352 Account were in furtherance of the original theft against FSCLE. The theft claims are personal to FSCLE in the same manner as the fraud claims because only FSCLE's funds were misappropriated into the 4352 Account. No other creditor shares this injury.

31.     The unjust enrichment claim is no different than the theft and fraud claims. FSCLE alleges the same set of facts that establish the fraud and theft claims also establish unjust enrichment claims. "A party may recover under an unjust enrichment theory if one party has obtained a benefit from another by fraud, duress, or the taking of unfair advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). FSCLE plainly alleged fraud and the taking of unfair advantage as bases for recovery on its unjust enrichment claims. "It would be unjust for any of the Defendants to retain the stolen FSCLE funds or any portion thereof." FSCLE Complaint, ¶ 737. The unjust enrichment claims are direct claims of FSCLE.

32.     FSCLE also asserts a constructive trust "claim." Admittedly, constructive trust is an equitable remedy – not a standalone claim. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015) ("A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment."). "The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property." *Id*. Thus, where the underlying torts of fraud and unjust enrichment are proven and the defendant is holding property that is traceable back to the original wrongdoing, Texas law provides a remedy by granting the victim an equitable interest in any property traceable to the fraud. "In weighing the imposition of a constructive trust, a court will identify whether a wrongful taking has occurred."

*Id.* Because a constructive trust is an available remedy on an underlying claim and not a standalone claim, it is not a property interest and, therefore, cannot become property of the estate or be subjected to the automatic stay. Only the underlying claim (i.e., fraud, unjust enrichment, etc.) is a property interest and, as shown above, the underlying claims here are FSCLE's property.

33.     Finally, FSCLE asserts RICO claims against numerous defendants. RICO claims are plainly personal to FSCLE because injuries are broadly defined under the RICO statute to allow "any person" injured to their "business or property" to bring a claim. 18 U.S.C.A. § 1964(c) ("*Any person injured* in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . .") (emphasis added). While the RICO statute is complex, the standing provision is plain and broad. FSCLE asserts an injury to its property and business in excess of $66 million that is not shared by other creditors and arises from violations of the RICO statute. It has standing to bring the RICO claim.

34.     In *E.F. Hutton*, the Northern District of Texas Bankruptcy Court was tasked with determining whether individual creditors could assert claims, including RICO claims against third parties for damage to them as opposed to damage to a partnership.  103 B.R. at 815-16. The court ruled that the individual creditors' claims, including RICO claims, were not property of the estate and could not be asserted by the trustee or a committee of creditors standing in the shoes of the trustee.  *Id.*; *see also Grimmett v. Brown*, 75 F.3d 506, 515-16 (9th Cir. 1996) (creditor asserting RICO claim may separately assert the claim and does not have to wait for the parallel bankruptcy proceeding to run its course); *In re Kalispell Feed & Grain Supply*, 55 B.R. 627, 629 (Bank. D. Mont. 1985) (creditor may bring a separate RICO claim parallel to a bankruptcy proceeding).

35.     Of course, many of the Trustee's arguments really go to the merits of FSCLE's RICO claims as opposed to whether those claims belong to the estate or to FSCLE.  As this Court has noted, when considering whether a claim belongs to the estate or to FSCLE, the Court is not to delve into the merits of the claims.  *With Purpose*, 654 B.R. at 724.  Additionally, the Fifth Circuit has made it clear that "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Seven Seas*, 522 F.3d at 585.  Thus, the fact that FSCLE has RICO claims predicated upon money laundering for the specific dollars stolen and defrauded from it and the bankruptcy estate may also have certain claims to recover certain funds does not render FSCLE's RICO claim property of the estate. The point of stealing the funds from FSCLE in the first place was to launder those funds back to Frinzi, James Goodman and others.  This is not a case where funds otherwise owed to the Debtor went to Debtor after November 3 and then were laundered in a first theft from Debtor. The money laundering efforts that occurred in 2021 and 2022 were a continuance of the enterprise to steal the funds from FSCLE in the first place (as opposed to the sums paid to Debtor prior to November 3).  Thus, those who worked with Frinzi, James Goodman, and others to support the original theft and to launder the funds back to them are each fully liable for the entire damage done to FSCLE.  *See Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485-86 (5th Cir. 1986) (RICO liability for aiding and abetting predicate acts); *United States v. Toney*, 598 F.2d 1349, 1355 (5th Cir. 1979) (co-conspirators under RICO conspiracy are liable for all the acts of other members of the enterprise). In addition, RICO carries with it the prospect of treble damages. FSCLE has the right to assert its RICO claims for the particularized harm done to it.

36. FSCLE's claims are its personal property. The injuries asserted are direct injury on FSCLE caused by the defendant non-debtors. FSCLE's claims are not property of the estate under section 541(a), and, therefore, the automatic stay under section 363(a)(3) is inapplicable.

**(iii)      The automatic stay was not violated, and the Trustee cannot seek relief under section 362(k); therefore, there is no entitlement to damages.**

37. As shown above, FSCLE's claims are against non-debtors and are its personal property. Therefore, the Trustee cannot show a willful stay violation that entitles the estate to damages of any sort. Moreover, the Trustee is not eligible for relief under section 362(k). Thus, if a stay violation was proven, the Trustee cannot recover actual damages, costs, attorney fees, or punitive damages.

38. Section 362(k) is inapplicable to corporate debtors because only "an individual injured by any willful violation of a stay" can recover under this subsection." *In re Tusa-Expo Holdings, Inc.*, 2014 WL 172276, at *4 (Bankr. N.D. Tex. Jan. 15, 2014) (stating "the Trustee, acting on behalf of the estate of a debtor corporation lacks standing to seek damages under section 362(k)" and collecting the following cases: *In re C.W. Min. Co.*, 477 B.R. 176, 193–94 (10th Cir. BAP 2012) (holding that a trustee acting on behalf of a bankruptcy estate, which is an artificial entity, is not an "individual"); *Spookyworld, Inc. v. Town of Berlin* (*In re Spookyworld, Inc.*), 346 F.3d 1, 8 (1st Cir. 2003) (holding that a corporation is not an "individual" for purposes of 362(h)); *Havelock v. Taxel* (*In re Pace*), 67 F.3d 187 (9th Cir. 1995) (holding that a trustee is not an "individual" for purposes of 362(h)); *Sonse v. Reinert & Duree, P.C.* (*In re Just Brakes Corp. Sys., Inc.*), 108 F.3d 881, 884–85 (8th Cir. 1997) (holding that under 362(h), the term "individual" does not apply to corporate entities); *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1551–53 (11th Cir. 1996) (same); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc.* (*In re Chateaugay Corp.*), 920

F.2d 183, 186–87 (2nd Cir.1990) (holding that the term "individual" applied only to natural persons and not artificial entities); *In re Amberjack Interests, Inc.*, 326 B.R. 379, 385 n. 1 (Bankr.S.D.Tex.2005) (stating that a trustee acting on behalf of the estate of a debtor corporation cannot be considered an "individual" for purposes of 362(h)); *In re First Republic Bank Corp.*, 113 B.R. 277, 278–79 (Bankr. N.D. Tex. 1989) (holding that a corporation is not an individual under section 362(h))).

39.     This Court must dismiss Count 6 for failure to state a claim under section 362(k).

**B.     The Declaratory Counts fail to state a claim upon which relief can be granted**

40.     As discussed in the jurisdictional section, FSCLE recognizes that it must commence an adversary proceeding if it wants this Court to determine an interest in property, including declaring a constructive or resulting trust. Fed. R. Bankr. P. 7001(2) and (9); *Matter of Haber Oil Co., Inc.*, 12 F.3d 426 (5th Cir. 1994); *Matter of UTSA Apartments 8, L.L.C.*, 886 F.3d 473 (5th Cir. 2018). FSCLE has not brought a complaint for a property determination or declaration against any property in the possession of the Trustee; therefore, there is no current case or controversy, and the Declaratory Counts should be dismissed for lack of jurisdiction.

41.     Ignoring the lack of jurisdiction, the Declaratory Counts should also be dismissed for failure to state a claim on two grounds: (1) equitable remedies and property determinations are available in bankruptcy as a matter of law for victims of theft and actual fraud and (2) the declaratory relief sought does not identify a specific res. Alternatively, the Court should exercise its discretion and dismiss the Declaratory Counts.

**(iv)      As a matter of law, a thief does not obtain title under Texas Law.**

42.      It is no secret that FSCLE asserts that the Debtor and its co-conspirators directly damaged FSCLE in an amount equal to at least $81,158,452.82. *See* Proof of Claim and the District Court Lawsuit. The Debtor and its officers and co-conspirators stole from FSCLE.

43.      State law controls property rights in bankruptcy. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Here, Texas law applies and makes clear that "[t]he general rule is that when property is stolen, the party who acquires the stolen property does not acquire its title." *Matter of Okedokun*, 968 F.3d 378, 390 (5th Cir. 2020) (*citing Matter of Approximately $80,600.00*, 537 S.W.3d 207, 211 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)).[2] Where property held by the debtor is stolen, the stolen property, while appearing in legal form or possession to be property of the debtor, is not property of the debtor and, therefore, does not become property of the estate under section 541(a) when a bankruptcy case is commenced.

44.      In *In re Newpower*, 233 F.3d 922 (6th Cir. 2000), the Sixth Circuit examined whether stolen funds were assets of the bankruptcy estate of the thief and thus subject to the automatic stay. Like the Texas law, the Sixth Circuit first determined that the person or entity which steals money or property does not obtain any title to the property stolen under Michigan law. *Id*. at 929 (also citing to the Restatement (Second) of Torts § 229 cmt. D (1965)). On that basis, the Sixth Circuit held that, "the debtor's bankruptcy estate has no property interest in such

---

[2] The *Approximately $80,600* court recognizes that there is an exception for stolen "money" obtained by a third party to the theft, who receives the stolen money in "due course of business, in good faith, and for valuable consideration." *Id*. at 212 (*citing Sinclair Houston Fed. Credit Union v. Hendricks*, 268 S.W.2d 290, 295 (Tex. Civ. App. 1954), writ refused NRE). The *Hendricks* court further held "where stolen money is acquired in an unlawful manner, the reason for the exception to the rule fails." *Sinclair Houston Fed. Credit Union v. Hendricks*, 268 S.W.2d at 295. Here, the Debtor is not a third party to the ft and this exception does not apply.

embezzled funds which are now in the hands of third parties. As discussed, debtor never had a legal interest in such funds and appellants should be allowed to pursue third party recipients to recover embezzled funds and property traceable to such funds to the extent that the law allows." *Id*. at 931. This holding is consistent with Supreme Court and Fifth Circuit precedent. *See Butner*, *supra*; *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("The estate cannot possess anything more than the debtor itself did outside bankruptcy. As one bankruptcy scholar has put the point: Whatever 'limitation[s] on the debtor's property [apply] outside of bankruptcy[ ] appl[y] inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either.'") (quoting D. Baird, Elements of Bankruptcy at 97 (6th ed. 2014).

45.     The Sixth Circuit did find that, if the debtor had any property purchased with the stolen funds, the property purchased and still in the debtor's possession (i.e., proceeds of the stolen property) would be assets of the estate but only to the extent of legal title. *Newpower*, 233 F.3d at 929-931. Section 541(d) places a limitation on property of the estate because equitable interests not held by the debtor are excluded. "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . .  becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, while proceeds of stolen property in the debtor's possession may be property of the estate because of the debtor's legal title, equitable title in the proceeds can still resides in the victim of the stolen property. The Sixth Circuit granted relief from the stay to allow the victim of the theft to proceed to state court to determine its equitable interest in the proceeds of the stolen property. *Newpower*, 233 F.3d at 935.

46.     Here, FSCLE is entitled as a matter of Texas law to recover its stolen property or obtain an equitable remedy to recover the proceeds of its stolen property. The Trustee mischaracterizes the nature of FSCLE's fraud and theft allegations in the District Court Lawsuit by focusing on the funds *out of* the 4352 Account rather than focusing on the unlawful appropriation of funds *into the* 4352 Account. The Trustee states: "Because FedEx did not own the 4352 Account or the funds therein, its property was not stolen . . ." Trustee Complaint, ¶ 77. FSCLE admits it did not own the 4352 Account. But, the 4352 Account only had funds in it because funds were first stolen from FSCLE's accounts. FSCLE is asserting it was directly and originally damaged when the Debtor and its co-conspirators fraudulently induced FSCLE to fund the 4352 Account while intending to embezzle those funds for their own personal benefit. If the Trustee possesses, locates, avoids, or recovers property stolen from FSCLE, FSCLE may commence an adversary proceeding to determine the extent of its title or an equitable interest in the stolen property and to compel its return. The Trustee fails to state a claim that as a matter of law FSCLE could never have an interest in, or equitable remedy to, any property possessed by the Trustee or held in the bankruptcy estate.

### (v)     Constructive Trusts are extraordinary but available remedies in Bankruptcy.

47.     This Circuit recognizes that the remedy of constructive trust may be asserted in a bankruptcy case through an adversary proceeding pursuant to the state law. *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437-40 (5th Cir. 1994); *Matter of UTSA Apartments 8, L.L.C.*, 886 F.3d 473, 490-91 (5th Cir. 2018). "The remedy of a constructive trust is . . . a potent one in bankruptcy . . ." *Id.* at 437. And, the remedy should only be imposed where there is "substantial reason to do so." *Id.* (*quoting Neochem Corp. v. Behring Int'l, Inc.* (*In re Behring Int'l, Inc.*), 61 B.R. 896, 902 (Bankr.N.D.Tex.1986)).

48.     Again, state law controls property rights in bankruptcy, and Texas law applies here. The circumstances for imposition of a constructive trust under Texas law require proof of a "(1) Breach of an informal relationship of special trust or confidence arising prior to and apart from the transaction in question, or actual fraud; (2) Unjust enrichment of the wrongdoer; and (3) Tracing to an identifiable res." *Matter of Monnig's Dep't Stores, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991). "Under Texas law and [Bankruptcy] Code § 541(d) then, property that a debtor fraudulently obtained prior to the petition date enters the bankruptcy estate only to the extent of legal title unless the constructive trust beneficiary fails to assert his equitable interest." *Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1014 (5th Cir. 1985). Texas applies the majority state law rule that the effective date of the constructive trust *relates back* to "when legal title passes...." to the wrongful possessor of the property – not when the constructive trust is imposed by judicial decree. *Id.* (citing *Meadows v. Bierschwale*, 516 S.W.2d 125, 133 (Tex.1974)); *see also In re Leitner*, 236 B.R. 420, 424 (Bankr. D. Kan. 1999) (". . . under the majority state law rule, a constructive trust arises at the time of the occurrence of the events giving rise to the duty to reconvey the property, not at the date of final judgment declaring the trust . . .").

49.     Contrary to the Trustee's legal argument, the remedy of a constructive trust is available in bankruptcy and may become available to FSCLE if stolen property or its proceeds are located and possessed by the Trustee. The theft against FSCLE occurred beginning in late 2021 and continued into 2022. Each wrongful act that unlawfully appropriated funds from FSCLE's accounts occurred prior to the Petition Date. If FSCLE seeks the equitable remedy of a constructive trust over property located and possessed by the Trustee, the constructive trust would relate back, be effective pre-petition, and result in the equitable interest of such property being excluded from property of the estate under section 541(d).

23

50.     The Trustee's legal argument that a constructive trust remedy is not available post-petition in bankruptcy appears to be based in either of two misunderstandings. First it appears he misunderstands a quote from the *Quality Holstein Leasing* opinion, which states: "Where state law impresses property that a debtor holds with a constructive trust in favor of another, *and the trust attaches prior to the petition date*, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings." 752 F.2d. at 1013-14 (emphasis added). It appears the Trustee wrongful believes that "attaches prior to the petition date" means the constructive trust must be *imposed* by final judgment prior to the petition date. But, as shown above, the effective date of attachment of a constructive trust in Texas relates back to the wrongful conduct. The date of imposition is irrelevant.

51.     Alternatively, the Trustee errs by relying on inapposite law derived from the Sixth Circuit's holding in *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994). The Sixth Circuit applied what appeared to be a bright line rule that constructive trusts are not an available remedy in bankruptcy unless they were *imposed* prepetition by court order. *Id*. *Omegas* is inapposite because in this Circuit *Quality Holstein Leasing* – not *Omegas* – is controlling. The *Omegas* panel expressly noted that it split from Fifth Circuit's precedent stated in *Quality Holstein Leasing*. *Id*. at 1448 (criticizing *Quality Holstein Leasing*).

52.     Moreover, the *Omegas* holding has been widely criticized and even distinguished and limited within the Sixth Circuit. A Delaware court summarized this criticism:

> However, the Sixth Circuit panel's blanket statement in *Omegas*, that constructive trusts come into existence at the time they are expressly recognized by a court, made without citation to any case authority, runs counter to the teaching of Third Circuit and Supreme Court law, that courts must look to state law to determine whether and when constructive trusts attach in bankruptcy law. The majority

> state law rule is contrary to that announced by the *Omegas* court;
> that is, the majority rule is that constructive trusts attach or relate
> back to the time of the unlawful act that led to the creation of the
> trust.

*In re Paul J. Paradise & Associates, Inc.*, 249 B.R. 360, 370-71 (D. Del. 2000); *see also Leitner*, 236 B.R. at 423 (collecting cases). Another Sixth Circuit panel in *Newpower* expressly limited the holding in *Omegas*, a non-theft case, and deemed its holding inapplicable to theft cases. *In re Newpower*, 233 F.3d 922, 936 ("[In *Omegas*] we were not faced with the question of either obtaining or enforcing a state court judgment holding that the equitable interest belonged to someone other than the debtor."). This distinction was material. "The situation presented by this case is significantly different. Here, Newpower is a thief. The critical issue therefore is not only who has legal title to the property, but also who has equitable title to the property purchased with the stolen funds." *Id*. The Sixth Circuit in *Newpower* held that stolen property is not property of the estate, "the debtor's bankruptcy estate has no property interest in such embezzled funds which are now in the hands of third parties," and relief from the stay should be granted to allow the state courts to determine whether the movant can "obtain" a constructive trust under state law over the proceeds of the embezzlement in the hands of the Trustee. *Id*. at 931, 935-36.

53.     Here, the Trustee seeks a declaration as a matter of law that under no circumstances can a constructive trust be imposed post-petition. As shown above, Fifth Circuit precedent, including *Quality Holstein Leasing,* allows the imposition of constructive trusts in bankruptcy, and the imposition of a constructive trust under Texas law and the majority state law rule relates back to the events that gave rise to the duty to recovery the property. Constructive and resulting trusts are extraordinary but available equitable remedies in bankruptcy. The Trustee fails to state a claim that as a matter of law FSCLE could never have a claim for equitable trust in this bankruptcy case.

If proceeds of the stolen property are possessed, located, avoided or recovered by the Trustee,

FSCLE may assert title or an equitable interest in that property through an adversary proceeding.

### (vi)    Without a specific res plead, the Trustee cannot obtain declaratory relief.

54.    The requests for declaration fail as a matter of law because they do not seek

property determinations on specific property held by the Trustee. For example, The Trustee seeks

in Counts 1 and 2 "a declaration that FedEx held no constructive trust against or to the 4352

Account, the funds therein, and the Transfers and Proceeds of such funds, as of the Petition Date

. . . the Debtor at no time held the 4352 Account or the funds therein in constructive trust for the

benefit of FedEx." Trustee Complaint, ¶¶ 55, 65. FSCLE does not dispute that as of the Petition

Date, there was no order establishing a trust on the 4352 Account or the funds therein. Moreover,

it is undisputed that as of the Petition Date the 4352 Account held no funds over which a trust

could be established. All the stolen funds from FSCLE had already been further transferred from

the 4352 Account to third parties.

55.    Today, the 4352 Account continues to have no funds. And, the stolen funds

transferred out of the 4352 Account as part of the Transfers and Proceeds are not property of the

estate. Possession of those transferred funds and their proceeds are held by third party, non-debtors.

That traceable stolen property and proceeds of the stolen property exist outside of the bankruptcy

estate presents a ripeness problem for the Trustee because "a constructive trust can attach only to

a specific res, or to some identifiable property that can be traced back to the original res acquired

by fraud." *Haber Oil*, 12 F.3d at 442.  An unfunded 4352 Account and non-debtor property do not

present a specific res that can be attached in this bankruptcy case. FSCLE has correctly abstained

from asserting a constructive trust until stolen property or its proceeds are possessed by the Trustee.

Conversely, the Trustee's preemptive use of declaratory remedies to negate any future claim of FSCLE as to a constructive trust is inappropriate.

56.     To be clear, FSCLE, like every other creditor in the bankruptcy case, cannot assert a direct interest in any estate tort claims (i.e., breach of fiduciary duty) or the estate's recovery on such tort claims. Similarly, FSCLE cannot assert a direct interest in property that is not traceable back to the theft on FSCLE.  FSCLE acknowledges that its interests as to the estate's tort claims and any non-stolen property of the Debtor are as an unsecured creditor. However, if the Trustee locates, avoids, or recovers stolen property or its proceeds, FSCLE is entitled to recover the stolen property from the Trustee or obtain an equitable remedy to recover the proceeds of the stolen property.

### (vii)     The Court should exercise its discretion to dismiss the Declaratory Counts.

57.     "The Declaratory Judgment Act, 28 U.S.C. § 2201(a), 'is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant.'" *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003) (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995)). If it is determined that the Declaratory Counts are justiciable, the Court should still exercise its discretion and dismiss the Declaratory Counts. This Circuit utilizes nonexclusive factors to assist a court in deciding whether to decide or dismiss a declaratory action.[3]

---

[3] *See Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 605 (5th Cir. 2022) (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc*., 996 F.2d 774, 778 (5th Cir. 1993))(" (1) whether there is a pending action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff's suit is anticipatory; (3) whether the plaintiff engaged in forum shopping; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedent in time or to change forums exist; (5) whether the federal court is a convenient forum

58.     The weight of factors strongly support dismissal here because the Trustee is using the Declaratory Judgment Act for two improper purposes: (1) he is collaterally attacking the District Court Lawsuit in effort to preclude claims against Frinzi and James Goodman for their theft and racketeering activities and (2) he preemptively filed suit in anticipation of FSCLE asserting property rights later in this case in an effort to litigate future claims now when facts are not readily ascertainable. Declaratory judgments are routinely dismissed where a "manufactured plaintiff" initiates a declaratory judgment action to gain tactical advantages over a "true plaintiff."[4]

59.     The Trustee "now stands in the shoes" of the Debtor, and the "debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative." *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 842 (W.D. Tex. 2017). The doctrine of *in pari delicto* applies to bar the Trustee, acting on behalf of the Debtor, from pursuing FSCLE's defendants for theft, racketeering, and other wrongdoing because the Debtor, through its officers, contributed to the injuries.

60.     While the Trustee, acting on behalf of the Debtor, cannot pursue claims for theft or racketeering, FSCLE can, and did so, by commencing the District Court Lawsuit. The Trustee

---

for the parties and witnesses; and (6) whether retaining the lawsuit in federal court would serve the purpose of judicial economy.

[4] *See, e.g., PAJ, Inc. v. Yurman Design, Inc.*, No. CIV.A.3:98-CV-2847-P, 1999 WL 68651, at *3 (N.D. Tex. Feb. 9, 1999) ("Such motives have been found to constitute a 'rush to the courthouse' and grounds for the dismissal of a declaratory judgment suit. Courts have found that the party filing suit in anticipation of a suit in another forum should not be rewarded for what amounts to forum shopping. Put another way, the Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum. Further, anticipatory suits deprive a potential plaintiff of his or her choice of forum."; *Serco Servs. Co., L.P. v. Kelley Co.*, 1994 WL 715913, at *2 (N.D. Tex. May 24, 1994), *aff'd*, 51 F.3d 1037 (Fed. Cir. 1995) ("A plaintiff's choice of forum should only be given protection where the plaintiff before the court is the proper plaintiff—not a manufactured plaintiff through the misapplication of a declaratory judgment.").

commenced this action in direct reaction to FSCLE commencing the District Court Lawsuit because he rightfully or wrongfully perceived it as a threat. Trustee Complaint, ¶ 1 (". . . FedEx's recent filing of a complaint with the District Court . . . has now forced the issue."). The Trustee ironically complains FSCLE "has commenced the proverbial race to the courthouse ***against the Trustee***." Trustee Complaint, ¶ 32 (emphasis added). Yet, caselaw shows FSCLE's action is proper[5] and that the Trustee is the one improperly using the Declaratory Judgment Act to race to this courthouse[6] because he preemptively seeks declarations and injunctions in this case to preclude FSCLE from the fair litigation of its theft and racketeering claims against the Debtor's officers and co-conspirators. The Declaratory Counts collaterally attack FSCLE and the District Court Lawsuit and improperly turn, FSCLE, the victim of the Debtor's and its officers and co-conspirators wrongdoing, into the defendant in a new lawsuit. The Declaratory Counts duplicate litigation and costs for FSCLE and unduly delay FSCLE's prosecution of the District Court Lawsuit.

---

[5] In *In re FoodServiceWarehouse.com, LLC*, 601 Fed. 396 (E.D. La. 2019), the Court held that a creditor directly injured may compete with a bankruptcy trustee for assets of non-debtors. The court stated:

> The Trustee's confessed purpose in enjoining Pride's claims is to clear the field of competition from any other claimants when pursuing [the debtor's] claims against LaPorte so that the Trustee can obtain the entirety of the available insurance proceeds without interference from Pride. This way all of the creditors, including Pride, can share in the benefits of the Trustee's efforts. To be sure, equality of distribution among creditors is an important general policy of bankruptcy law, but Pride is not similarly-situated to the other creditors who do not possess a personal cause of action against LaPorte for direct injury. No principle of bankruptcy law suggests that Pride should be impoverished on its direct claims so that other creditors will be better off.

*Id*. at 412 (citations omitted) (note Pride was the competing creditor and LaPorte is the defendant non-debtor).

[6] *See* Note 5, *supra*.

61.     The Trustee complains that FedEx "wanted and wants control over the Bankruptcy
Case and the Estate," but, actually, it is the Trustee that wants to control FSCLE and its District
Court Lawsuit and utilize this forum to do so. Trustee Complaint, ¶ 34. The Trustee complains that
it is "virtually impossible" to "enter into settlements[] and grant releases without FedEx also giving
a release to a particular defendant." *Id.* at ¶ 35. This transparency shows that the purpose of the
Trustee Complaint is to silence FSCLE so that the Trustee can do as he wishes. *See
FoodServiceWarehouse.com*, 601 B.R. at 411-12 (noting the similar trustee motivations in that
case). However, a bankruptcy trustee never has authority to settle third party claims and grant third
party releases. Those claims and releases are owned by the third party, and allowing a trustee to
takeover the claims of a third party would raise takings concerns under the U.S. Constitution.

62.     Contrary to the allegations of attempting to control the estate, FSCLE merely wants
it stolen property back.  FSCLE is acting in good faith and reserving and pursuing its rights. To
date, FSCLE has exercised two remedies. First, it petitioned for this involuntary chapter 7 case
and filed a proof of claim against the Debtor's estate. This displaced the Goodmans, conspirators
in the theft, from control of the Debtor and imposed an independent trustee. Second, FSCLE filed
the District Court Lawsuit against non-debtors seeking to recover its direct damages resulting from
the fraud and theft.

63.     At the time FSCLE joined as a petitioning creditor, FSCLE had no knowledge of
where its stolen property was located. Was it still possessed by the Debtor? Was it traceable? Had
it been laundered to other persons? Indeed, at the time FSCLE joined, it understood the Debtor
was still operating several businesses and possessed business assets that could be liquidated for all
creditors. That understanding has proven untrue. At the time FSCLE filed its proof of claim,
FSCLE was still unsure where its stolen property was located but it had become clear that any

30

material portion of the stolen property was not being held by the Trustee or the Debtor and that it had been laundered through a series of transactions and shell companies. FSCLE's Proof of Claim contained the reservation of rights to put everyone on notice that it **_may_** assert a property interest or other equitable remedy in any stolen property located, including stolen property located, recovered, or possessed by the Trustee.

64.     As a practical matter, FSCLE stands to recover approximately 70 cents of every dollar in this case without asserting any property interests or equitable rights. Therefore, FSCLE has a business decision to make on whether the value of litigation to obtain the full dollar of the stolen property is worth it compared with obtaining 70 cents without any litigation. It is conceivable that FSCLE may not seek any remedy against the estate to recover stolen property unless the Bondholders assert a security interest in the same stolen property and seek to take the full dollar for themselves. Plainly, the Bondholders cannot have an interest in stolen property if the estate does not have an interest in the stolen property. This uncertainty regarding the Bondholders is further cause for the Court to exercise its discretion at this time to dismiss the Declaratory Counts without prejudice. The Court should only resolve property interests in this bankruptcy case related to stolen property in adversary proceedings that involve all parties of interest, including FSCLE, the Trustee, and the Bondholders to the extent they assert a security interest in the same stolen property. The Declaratory Counts are not the right vehicle for these determinations because they do not identify specific property for a property determination and do not provide a complete resolution. The Court should dismiss the Declaratory Counts and resolve any future disputes when they accrue after property is located and rights are affirmatively claimed in such property.

## CONCLUSION

For the reasons stated herein, the Court should dismiss the Trustee Complaint.


Respectfully submitted,

**BUTLER SNOW LLP**

/s/ Adam M. Langley
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
Danny Van Horn (admitted *pro hac vice*)
6075 Poplar Avenue, Suite 500
Memphis, TN  38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com
cam.hillyer@butlersnow.com
danny.vanhorn@butlersnow.com

and

Martin A. Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com

*Attorneys for FedEx Supply Chain
Logistics & Electronics, Inc.*

32

## <u>CERTIFICATE OF SERVICE</u>

I, Adam M. Langley, certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically in this case.

Dated: January 10, 2024

_/s/ Adam M. Langley_____

85153181.v3